IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: : | |
| : | |
| AMTROL HOLDINGS, INC., *et al.,* : | Bankruptcy Case No. 06-11446 |
| : | |
| Debtors. : | |
| : | |
| NEW ENGLAND GAS COMPANY, *et al.,* : | |
| : | |
| Appellants, : | |
| : | |
| : | Civil Action No. 07-75-GMS |
| : | |
| AMTROL HOLDINGS, INC., *et al.,* : | |
| : | |
| Appellees. : | |

OPENING BRIEF OF APPELLANTS

Dated: May 14, 2007

John D. Demmy (I.D. No. 2802)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Phone: (302) 425-3308
Fax: (610) 371-8515
E-mail: jdd@stevenslee.com

-and-

Russell R. Johnson III
2258 Wheatlands Drive
Manakin-Sabot, VA 23103
Phone: (804) 749-8861
Fax: (804) 749-8862
E-mail: russj4478@aol.com

*Counsel for Appellants New England*
*Gas Company and Narragansett Electric*
*Company, both d/b/a National Grid*

SL1 722468v1/016001.00009

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING .................... 1

STATEMENT OF ISSUES PRESENTED ON APPEAL AND
APPLICABLE STANDARD OF REVIEW ........................................................... 2

    A.       Statement of Issues Presented .................................................. 2

    B.       Applicable Standard of Review ................................................ 3

SUMMARY OF ARGUMENT ......................................................................... 3

STATEMENT OF FACTS ............................................................................... 6

    A.       Procedural History .................................................................. 6

           1.       The Bankruptcy Case and Proceedings Related
                    to the Utility Motion ..................................................... 6

           2.       This Appeal and Related Proceedings............................. 9

    B. Factual Background...................................................................... 11

ARGUMENT ............................................................................................... 14

    Legal Standard ...................................................................................... 14

    A.       THE BANKRUPTCY COURT COMMITTED REVERSIBLE
           ERROR BY APPROVING THE ADEQUATE ASSURANCE
           OF PAYMENT PROCEDURES SOUGHT BY THE
           APPELLEES IN THE UTILITY MOTION ............................................. 15

    B.       THE BANKRUPTCY COURT ERRED IN HOLDING THAT
           THE UTILITY MOTION WAS A PLEADING FILED
           PURSUANT TO SECTION 366(c)(3)(A) AND CONDUCTING
           AN EVIDENTIARY HEARING AT THE FINAL HEARING ............... 18

    C.       THE BANKRUPTCY COURT COMMITTED REVERSIBLE
           ERROR, BOTH LEGALLY AND FACTUALLY, BY
           IMPROPERLY HOLDING THAT APPELLANTS'
           ADEQUATE ASSURANCE OF PAYMENT REQUEST OF
           A TWO-MONTH DEPOSIT SHOULD BE MODIFIED TO THE
           PAYMENT OF A TWO-WEEK DEPOSIT PURSUANT TO THE
           FINAL UTILITY ORDER....................................................................... 20

CONCLUSION ............................................................................................ 22

SL1 722468v1/016001.00009

## TABLE OF AUTHORITIES

### CASES

*Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.)*,
  283 B.R. 537 (B.A.P. 8th Cir. 2002) .............................................................................. 10

*In re Indian Palms Associates, Ltd.*, 61 F.3d 197 (3d Cir. 1995) ...................................... 10

*In re Lucre, Inc.*, 333 B.R. 151 (Bankr. W.D. Mich. 2005) ................................................ 15

*In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116 (3d Cir. 1999) ........................... 3

*Pro-Tec Services, LLC v. Inacom Corp. (In re Inacom Corp.)*
  2004 WL 2283599 (D. Del.) ................................................................................................ 3

### STATUTES

11 U.S.C. § 366 ........................................................................................... *passim*

28 U.S.C. § 157(b)(2) .............................................................................................. 2

11 U.S.C. § 158(a)(1) .............................................................................................. 2

### RULES AND REGULATIONS

Rule 8001 *et seq.* of The Federal Rules Of Bankruptcy Procedure ..................................... 1

SL1 722468v1/016001.00009

## STATEMENT OF THE NATURE
## AND STAGE OF THE PROCEEDING

Pursuant to Federal Rule of Bankruptcy Procedure 8001 *et seq.*, New England Gas Company and Narragansett Electric Company, both d/b/a National Grid (collectively, the "Appellants") have appealed from the *Final Order (I) Prohibiting Utility Companies From Discontinuing, Altering or Refusing Service, (II) Establishing Procedures For Providing Deposits To Requesting Utilities, (III) Deeming Utility Companies To Have Adequate Assurance of Payment, and (IV) Establishing Procedures For Resolving Requests For Additional Assurance Pursuant To 11 U.S.C. §§ 105(A) & 366* dated January 11, 2007 (the "Final Utility Order"), issued by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the bankruptcy cases of debtors Amtrol Holdings, Inc. *et al.*, Case No. 06-11446 (the "Bankruptcy Case").  A true and correct copy of the Final Utility Order is included in Appellant's *Appendix in Support of Opening Brief* (the "Appendix"), at pages A-61 to A-65.  Further references to the Appendix shall be to "App. at ___" with the appropriate page number(s) supplied.

The Final Utility Order concerned *Debtors' Motion For a Bridge Order and a Final Order (I) Prohibiting Utility Companies From Discontinuing, Altering or Refusing Service, (II) Establishing Procedures For Providing Deposits To Requesting Utilities, (III) Deeming Utility Companies To Have Adequate Assurance of Payment, and (IV) Establishing Procedures For Resolving Requests For Additional Assurance Pursuant To 11 U.S.C. §§ 105(a) & 366* (the "Utility Motion"), which was a core proceeding in the

1

Bankruptcy Case pursuant to 28 U.S.C. § 157(b)(2). This Court has jurisdiction to hear

this appeal of the Final Utility Order pursuant to 28 U.S.C. § 158(a)(1).

This is Appellants' Opening Brief in support of their appeal.

## STATEMENT OF THE ISSUES PRESENTED AND
## THE APPLICABLE STANDARD OF REVIEW

**A.      Statement of Issues Presented**

1. Did the Bankruptcy Court err in entering the Bridge Utility Order (as defined

    below) on an *ex parte* basis, which required the Appellants to retain counsel

    and file an objection to retain its rights under 11 U.S.C. § 366?

2. Did the adequate assurance of payment procedures approved by the Bankruptcy

    Court in the third Ordered paragraph of the Final Utility Order violate the

    provisions of 11 U.S.C. § 366?

3. Did the Bankruptcy Court err in holding that the Debtors' Utility Motion was a

    pleading filed pursuant to 11 U.S.C. § 366(c)(3)(A) that was ripe for an

    evidentiary hearing and adjudication at the January 11, 2007 hearing?

4. Did the Bankruptcy Court err in holding an evidentiary hearing at the January

    11, 2007 final hearing on the Utility Motion and Objection to the Utility Motion

    filed by the Appellants?

5. Did the Bankruptcy Court err in holding that Appellants' adequate assurance of

    payment request of a two-month deposit should be modified to the payment of a

    two-week deposit pursuant to the Final Utility Order?

2

**B.       Applicable Standard of Review**

This appeal resulted from legal determinations by the Bankruptcy Court concerning

11 U.S.C. § 366 contained in the Final Utility Order.  The Appellants submit that

resolution of Issue Nos. 1 through 4 presented in this Appeal require this Court's

interpretation of 11 U.S.C. § 366.  Accordingly, this Court should conduct a *de novo*

review of the Issue Nos. 1 through 4 presented in this Appeal.  *See In re O'Brien*

*Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999); *Pro-Tec Services, LLC v.*

*Inacom Corp. (In re Inacom Corp.)* 2004 WL 2283599 (D. Del.) (A bankruptcy court's

legal determinations are reviewed *de novo,* its factual findings for clear error and its

exercise of discretion for abuse).  A true and correct copy of the *Pro-Tec Services* opinion

is attached hereto as Exhibit A.

With respect to Issue No. 5, involving both factual findings and legal

determinations concerning 11 U.S.C. § 366 by the Bankruptcy Court, the standard for

reviewing the Bankruptcy Court's factual findings is clear error.  *Id.*

## SUMMARY OF ARGUMENT

Section 366 of the Bankruptcy Code was amended, effective October 2005, by

adding subsection (c), which applies to Chapter 11 bankruptcy cases.  Section 366(c)(1)

sets forth what adequate assurance of payment means and specifically states that an

administrative expense priority shall not constitute an "assurance of payment."  Section

366(c)(2) also provides that a utility may alter, refuse or discontinue service to a debtor if

the utility does not receive adequate assurance of payment from the debtor that is

3

SL1 722468v1/016001.00009

satisfactory to the utility within 30 days of the petition date. Pursuant to Section 366(c)(3), the Court, after notice and a hearing, may order modification of the amount of assurance of payment under Section 366(c)(2).

Despite the foregoing, the Bankruptcy Court has routinely ignored the requirements of Section 366(c) and adopted procedures that violate the provisions of Section 366 and make the process extremely more burdensome for utilities that seek to obtain adequate assurance of payment from a debtor. In this case, which involved a mere 17 utility companies and only two utilities that filed an objection to the Utility Motion, neither the Debtors nor the Bankruptcy Court attempted to comply with Section 366 of the Bankruptcy Code. On the day after they sought Chapter 11 bankruptcy protection, the Debtors, without consultation with Appellants or any of the Debtors' other 15 utility companies regarding their requests for adequate assurance of payment, filed the Utility Motion seeking to avoid the requirements of Section 366(c) and establish: (1) procedures not set forth in Section 366; and (2) the form and amount of adequate assurance of payment that that was satisfactory to the Debtors. The Bankruptcy Court rewarded the Debtors' efforts by entering the Bridge Utility Order two days later, on an *ex parte* basis, that placed the burden on Appellants and other utility companies to: (1) object to the Debtors' proposed procedures; (2) object to the Debtors' proposed adequate assurance of payment, which completely reverses the statutory framework under which the utilities are to be provided adequate assurance of payment that is satisfactory to the utility and the debtor has the burden to move under Section 366(c)(3) to seek to modify the foregoing request; and (3) attend a final hearing on the Utility Motion.

4

Although there is no pleading in the record that demonstrates that the Debtors were properly before the Court to legally seek to modify the Appellants' requests for adequate assurance of payment or that there was a pleading foundation for such evidence, the Court held an evidentiary hearing on the Utility Motion on January 11, 2007 over the objection of Appellants. Even with the Bankruptcy Court improperly providing the Debtors with the opportunity to present evidence as to why the Appellants' two month cash deposit requests should be modified, the Debtors failed to present any evidence as to why the Bankruptcy Court should modify the Appellants' requests for adequate assurance of payment. The only evidence presented by the Debtors at the January 11, 2007 hearing was the proffered testimony of their CFO in support of the Debtors' proposed form and amount of adequate assurance of payment. Specifically, the CFO's proffered testimony was that the Debtors had access to sufficient DIP Financing to pay their utility bills and administrative expenses. Although the foregoing evidence does not even begin to address why the Appellants' requests for adequate assurance should have been modified and the evidence is nothing more than a promise of an administrative expense priority that is no longer a permissible form of adequate assurance of payment under Section 366(c)(1)(B), the Bankruptcy Court held that the Debtors' form and amount of adequate assurance of payment was proper. In reaching its decision, the Bankruptcy Court failed to mention or even address why the Appellants' two month deposit requests should have been modified.

It is clear that the Bankruptcy Court's refusal to require the Debtors to file a motion under Section 366(c)(3) to modify the Appellants' requests for adequate assurance of payment was more than mere form over substance. Section 366(c) establishes a

5

framework under which the Debtors were required to pay the Appellants the adequate

assurance of payment they requested or file a motion seeking to modify those requests,

which would have set forth the legal and factual basis upon which the Debtors were

seeking to modify the Appellants' requests. Instead, the Appellants were left to guess why

the Debtors were seeking to modify their requests for adequate assurance of payment.

Moreover, the Bankruptcy Court never even required the Debtors to meet their burden as

to why the Appellants' requests for adequate assurance of payment should be modified.

Not only did the Bankruptcy Court fail to require the Debtors to comply with the

requirements of Section 366, it reduced the applicable standard from why the Appellants'

requests for adequate assurance of payment should be modified to why the Debtors'

proposed adequate assurance of payment should be adopted. Accordingly, this Court

should reverse the Bankruptcy Court's rulings on Section 366 and order the Bankruptcy

Court to follow the requirements of Section 366, as amended in October 2005.

## STATEMENT OF FACTS

**A.    Procedural History**

   **1.    The Bankruptcy Case and Proceedings Related to the Utility Motion**

On December 18, 2006 (the "Petition Date"), the Debtors commenced their cases

under the Bankruptcy Code. On December 19, 2006, the Debtors filed the Utility Motion

(Bankruptcy Court Docket No. 23), App. at A-1, to address what they claim are 27 utility

providers. Exhibit C to the Utility Motion (Bankruptcy Court Docket No. 29), App. at A-

34, shows that the Debtors have 27 accounts with 17 utility providers (3 waste removal

6

companies, 4 water and sewer companies, 6 phone companies, and 5 gas and electric companies).

Instead of complying with the requirements of Section 366(c) of the Bankruptcy Code and responding to adequate assurance demands of their 17 utility companies, the Debtors elected to file the Utility Motion seeking to implement procedures to avoid the requirements of Section 366(c).[1] In addition to seeking to implement various procedures, the Debtors also sought to ignore the utilities' requests for adequate assurance of payment and establish as adequate assurance of future payment a deposit in an amount equal to the average cost to the Debtors of two weeks of service over the twelve months preceding the Petition Date to any requesting utility that did not already hold a deposit equal to or greater than two weeks of utility services or if the requesting utility was not currently paid in advance for its services.  Utility Motion at ¶ 9; App. at A-4.

Instead of requiring the Debtors to contact their utility companies concerning the utilities' deposit requests and follow the requirements and procedures set forth in Section 366, on December 20, 2006, the Court on an *ex parte* basis, entered the *Bridge Order (I) Prohibiting Utility Companies From Discontinuing, Altering or Refusing Service, (II) Establishing Procedures For Providing Deposits To Requesting Utilities, (III) Deeming*

---

[1]    The Debtors did not properly serve the Appellants with the Utility Motion.  The *Affidavit of Service* concerning the Utility Motion (Docket No. 31), App. at A-24, reflects that the Debtors purportedly served the Appellants via overnight mail to a post office box (Exhibit A to the Affidavit of Service), via facsimile to the Appellants' payment processing center (Exhibit B to the Affidavit of Service), and via email to the Appellants' payment processing center (Exhibit C to the Affidavit of Service).  Accordingly, the Debtors failed to properly serve the Appellants with the Utility Motion pursuant Bankruptcy Rules 7004 and 9014 require that service of a motion upon a corporation be made by mail to the attention of an officer, a managing or general agent or to any other agent authorized by appointment or by law.

7

*Utility Companies To Have Adequate Assurance of Payment, and (IV) Establishing*

*Procedures For Resolving Requests For Additional Assurance Pursuant To 11 U.S.C. §§*

*105(a) & 366* (the "Bridge Utility Order") (Bankruptcy Court Docket No. 51), App. at A-

35. The Bridge Order established January 8, 2007 as the deadline to file objections to the

Utility Motion and scheduled a final hearing on January 11, 2007, on the Utility Motion

and any objections.

On January 8, 2007, the Appellants' filed their Objection to the Utility Motion (the

"Objection") (Bankruptcy Court Docket No. 94), App. at A-38. In the Objection, the

Appellants' objected on the following grounds:

A.    The Debtors' Proposed Adequate Assurance of Payment Procedures Violate the Express Provisions of Section 366 and Should Be Rejected By the Court. (Objection at pp. 13-19)

    1.    The Debtors' Attempt To Extend The 20 and 30-Day Provisions Of Section 366 Should Be Rejected. (Objection at pp. 14-16)

    2.    The Court Should Reject The Procedures That Attempt To Add Time Consuming And Burdensome Requirements That Are Not Found In Section 366. (Objection at pp. 16-17)

    3.    The Court Should Reject The Debtors' Proposed Adequate Assurance Procedures That Contravene The Express Provisions of Section 366 Which Requires a Debtor To Provide A Utility With Adequate Assurance As Demanded By the Utility, And If The Debtor Believes That The Deposit Should Be Modified, The Debtor Must File A Motion To Modify The Adequate Assurance Deposit Paid To The Utility.

B.    The Court Should Order the Debtors To Provide a Two-Month Deposit As Adequate Assurance of Payment Pursuant To Section 366 Of the Bankruptcy Code.

8

SL1 722468v1/016001.00009

A final hearing on the Utility Motion was held on January 11, 2007 (the "Final

Hearing"), during which the Court made the following determinations:

a.    **Denying Appellants' Objection That The Relief Sought In the Utility Motion Violated The New Procedural Requirements Of Section 366.** Appellants' raised various objections to the Debtors' proposed adequate assurance of payment procedures. In addition, Appellants raised an objection that the evidentiary hearing was improper because the Debtors were not properly before the Court to seek to a modification of Appellants' deposit requests. The Court overruled Appellants' objections, stating that the Court was "satisfied with the process that's been followed . . . it's an issue of form over substance." Final Hearing Tr. at p. 33, lines 12-16.

b.    **Denying Appellants' Objection To The Debtors' Two-Week Deposit Offer, And Request For A Two-Month Deposit.** The Court held that under the "facts and circumstances of this case," a two-week deposit was adequate assurance to the Appellants pursuant to Section 366. In support of that ruling, the Court stated:

> I think we have a particularly strong D-I-P loan. We have a Debtor that is operating on a cash flow positive basis. I think it's going to be a – we hope that it's going to be a short and sweet bankruptcy case before we get to a plan confirmation.

Final Hearing Tr. at p. 55, line 24 to p. 56, line 7; App. at A-78.

On January 11, 2007, the Court entered the Final Order granting the relief sought in

the Utility Motion (the "Final Utility Order") (Bankruptcy Court Docket No. 120). The

procedures for determining requests for adequate assurance of payment approved by the

Bankruptcy Court are listed on pages 2, 3 and 4 of the Final Utility Order. *See* App. at A-

62 to A-64

### 2.    This Appeal and Related Proceedings

The Appellants appealed the Final Utility Order by timely filing their *Notice of*

*Appeal* on January 19, 2007 (District Court Docket No. 1). On January 26, 2007, the

9

Appellants filed their *Designation of Items To Be Included In the Record and Statement of Issues on Appeal* (the "Appellants' Designation of Record") (District Court Docket No. 2). Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, the Appellants' Designation of Record consisted of the Final Hearing Transcript (Bankruptcy Court Docket No. 110) and pleadings and exhibits relating to the Utility Motion; all of which had been filed in the Bankruptcy Case.

On February 5, 2007, the Appellees filed the *Debtors' Designation of Additional Items To Be Included In Record On Appeal Pursuant To Bankruptcy Rule 8006* (the "Appellees' Designation of Record") (District Court Docket No. 3). Other than the transcript of the Final Hearing (Bankruptcy Court Docket No. 110), none of the items set forth in Appellee's Designation of Record were introduced into evidence at the Final Hearing, and, therefore are inadmissible for purposes of this Appeal. *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 203-205 (3d Cir. 1995).

If Debtors had attempted to introduce the following items in the Appellees Designation of Record at the Final Hearing, the Appellants would have raised the following evidentiary objections below, and herein move to strike from Appellee's Designation of Record:

1.    Exhibit 1 - *Affidavit in Support of First Day Motions by Larry T. Guillemette*:

        A.    Fed. R. Evid. 802: Inadmissible hearsay

        B.    *See Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.)*, 283 B.R. 537, 543 (B.A.P. 8th Cir. 2002) (ruling that where a bankruptcy

10

court does not agree to consider a matter by affidavit nor admits it into evidence, the affidavit is apart of the Bankruptcy Record under FED. R. CIV. P. 43(a) subject to the Rules of Evidence precluding inadmissible hearsay).

    2.      Exhibit 2 - December 20, 2006 Transcript of First Day Hearing Before the Honorable Kevin Gross:  Fed. R. Evid. 403 - The Appellants were not given notice of this hearing and did not have an opportunity to attend the hearing or cross-examine the applicable witnesses.

    3.      Exhibits 7, 8, 9, 10, 11 - orders from other bankruptcy cases: Fed. R. Evid. 402: Relevance Evidence – Appellants raised this objection at the hearing, but the Bankruptcy Court did not rule on the objection because the Appellees never moved these documents into evidence.

**B.**    **Factual Background**

               **Facts Regarding the Appellants**

At the Final Hearing on the Utility Motion, the Appellants proffered the following testimony of William Grossman that set forth the basis for Appellants' two-month deposit requests that was not objected to by the Debtors.

    1.      The Appellants provided the Debtors with pre-petition gas and electric utility service, and have continued to provide the Debtors with post-petition utility service.  Final Hearing Tr. at p. 37, line 25 p. 38, lines 1-4; App. at A-75 to A-76.

    2.      Pursuant to the Appellants' billing cycle regulations and tariffs, the Appellants bill the Debtors as follows:  The meters are read every 27 to 33

11

days, on approximately a monthly basis. Final Hearing Tr. at p. 38, lines 4 to 8; App. at A-76. Bills are due upon receipt but the Appellants' customers are afforded at least 20 days after rendition of the bill to make payment without being considered in default. Final Hearing Tr. at p. 38, lines 8 to 10; App. at A-76. Non-payment by a customer is not acted upon by the Appellants until the next bill is issued the following month. Final Hearing Tr. at p. 38, lines 10 to 12; App. at A-76. At that time, if the prior month's bill has not been paid, a default notice is issued by the Appellants providing the Debtors with 10 days to cure the default. Final Hearing Tr. at p. 38, lines 12 to 14; App. at A-76. Accordingly, if the Debtors fail to pay an invoice issued by the Appellants, the Debtors could receive up to 70 days of gas or electric utility service before the Appellants could begin to terminate utility service to the Debtor for a post-petition non-payment. Final Hearing Tr. at p. 38, lines 15 to 20; App. at A-76.

3.    The Appellants' billing cycle is established by the applicable tariffs and regulations of the Rhode Island Public Utility Commission, and the Appellants are required to comply with those tariffs and regulations. Final Hearing Tr. at p. 38, lines 21 to 24; App. at A-76.

4.    The Appellants have requested a post-petition adequate assurance deposit in the total amount of $302,018, which is a two-month deposit that the Rhode Island Utility Commission permits the Appellants to request from their

12

customers.  Final Hearing Tr. at p. 38, line 25, to p. 39, line 4; App. at A-76 to A-77.

5.    The two-month deposit in the amount of $302,018 requested by the Appellants is less than the 70 days of exposure, but it is the deposit that the Appellants believe they are obligated to request pursuant to their tariffs which they are bound by.  Final Hearing Tr. at p. 39, lines 4 to 7; App. at A-77.

6.    The Debtors' adequate assurance offer is not satisfactory to the Appellants because it does not even cover one-half of one month's billing cycle.  Final Hearing Tr. at p. 39, lines 8 to 12; App. at A-77.

**Facts Regarding the Appellees**

At the Final Hearing on the Utility Motion, the Debtors' proffer of evidence consisted of the allegation that "D-I-P financing will provide enough funding to pay all utility bills and in fact all administrative expenses in these cases incurred by the Debtors during these Chapter 11 cases in full and on time."  Final Hearing Tr. at p. 32, lines 20 to 23; App. at A-70.  The foregoing evidence came in through the proffered testimony of the Debtors' CEO, who merely stated that the Debtors have $2 million in cash on hand and have availability under the DIP Loan of $12 to $13 million (Final Hearing Tr. at p. 32, line 2, through p. 34, line 2); App. at A-70 to A-72.

Although the Debtors referred the Bankruptcy Court to orders entered in other Delaware bankruptcy cases that purportedly approved similar adequate assurance procedures sought by the Debtors in the Utility Motion, *i.e.*, two-week deposits (Final

13

Hearing Tr. at p. 37, lines 3 to 17; App. at A-75), such were not introduced into evidence.

Hence, the Debtors' failed to offer anything into evidence at the Final Hearing other than

the proffered testimony of their CFO.

## ARGUMENT

### Legal Standard

Sections 366(b) and (c) of the Bankruptcy Code provide:

(b) Such utility may alter, refuse, or discontinue service if neither the trustee
nor the debtor, within 20 days after the date of the order for relief, furnishes
adequate assurance of payment, in the form of a deposit or other security,
for service after such date. . . .

(c)(1)(A) For purposes of this subsection, the term 'assurance of payment'
means

    (i) a cash deposit;

    (ii) a letter of credit;

    (iii) a certificate of deposit;

    (iv) a surety bond;

    (v) a prepayment of utility consumption; or

    (vi) another form of security that is mutually agreed upon between
the utility and the debtor or the trustee.

    (B) For purposes of this subsection an administrative expense
priority shall not constitute an assurance of payment,

    (2) Subject to paragraphs (3) and (4), with respect to a case filed under
chapter 11, a utility referred to in subsection (a) may alter, refuse, or
discontinue utility service, if during the 30-day period beginning on the date
of the filing of the petition, the utility does not receive from the debtor or
the trustee adequate assurance of payment for utility service that is
satisfactory to the utility;

    (3)(A) On request of a party in interest and after notice and a hearing, the
court may order modification of the amount of an assurance of payment
under paragraph (2).

14

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider

(i) the absence of security before the date of the filing of the petition;

(ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or

· (iii) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

A.    **THE BANKRUPTCY COURT COMMITTED REVERSIBLE ERROR BY APPROVING THE ADEQUATE ASSURANCE OF PAYMENT PROCEDURES SOUGHT BY THE APPELLEES IN THE UTILITY MOTION.**

Section 366(c) requires the Debtors in a Chapter 11 bankruptcy case to provide their utilities, such as the Appellants, with adequate assurance of payment in one of the enumerated forms that is acceptable to the utility within the first 30 days of the bankruptcy proceeding or file a motion pursuant to Section 366(c)(3)(a)(3)(A) requesting the court to modify the utility's request. *See In re Lucre, Inc.*, 333 B.R. 151 (Bankr. W.D. Mich. 2005). As Section 366 already provides a procedure for the utility to request adequate assurance of payment and for a debtor to pay it or seek to modify the utility's request for adequate assurance of payment if it believes such a modification is appropriate, there was no need for the Bankruptcy Court in a case involving 17 utilities to establish elaborate procedures that do nothing more than: (1) make the process more burdensome for the utilities; (2) extend the 30-day time period for the provision of adequate assurance of payment to the utilities; and (3) alter the statutory standard that requires the debtor to provide adequate assurance of payment that is satisfactory to the utility to a standard that is

15

based on what adequate assurance of payment is acceptable to the Debtor. Moreover, the Bankruptcy Court did not have the authority to add these procedures because Section 366 does not authorize any of the procedures in the Final Utility Order. Furthermore, as set forth below, many of the procedures are contrary to the existing requirements of Section 366.

In the third Ordered paragraph of the Final Utility Order, the Bankruptcy Court approved the following procedures, which are not set forth in Section 366 and make the adequate assurance of payment process more burdensome for the utilities:

1. If a utility wants the two-week deposit "offered" by the Debtors, the utility is required to send an "Additional Payment Requests" within 20 days of the entry of the Final Utility Order that are in compliance with paragraph 11 of the Utility Motion (Subsection d) on page 2 of the Final Utility Order);

2. Paragraph 11 of the Utility Motion requires the "Additional Payment Requests" to be in writing, sent to Debtors' counsel, counsel for the DIP Lenders, counsel for the committee of unsecured creditor and the Office of the United States Trustee and must contain the following information: (i) the location for which utility services are provided, (ii) a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or other pre-payments or assurances previously provided by the Debtors **(This information is statutorily irrelevant pursuant to Section 366(c)(3)(B))**, (iii) the reason(s) why the treatment afforded pursuant to the procedures set forth in the Utility Motion does not constitute satisfactory adequate assurance of payment, and (iv) a proposal for what would constitute adequate assurance from the Debtors, along with an explanation of why such proposal is reasonable **(Section 366(c)(2) requires the Debtors to provide the utilities with adequate assurance of payment that is satisfactory to the utility. Accordingly, the foregoing two provisions are directly contrary to what is required by Section 366);**

3. If a utility fails to made an Additional Payment Request within 20 days of the entry of the Final Utility Order shall be deemed to have waived their rights to receiving adequate assurance of payment (Subsection f), page 3 of the Final Utility Order); and

16

4.    If a utility wants to obtain more than the two week "Additional Adequate Assurance," it has to file what is defined as an Additional Assurance Appeal, which is essentially a Motion setting forth the items set forth in paragraph 2 above, which would be heard at the next omnibus hearing date if the Additional Assurance Appeal pleading was filed more than 15 days prior to the hearing (Subsections g) and i) of the Final Utility Order).

Section 366 does not establish a deadline for a utility to make a request for adequate assurance of payment. Accordingly, the procedures outlined in paragraphs 1 and 3 above that require an adequate assurance of payment request to be made within a specified time (20 days from the Final Utility Order in this case) and deem the utility to have waived its right to obtain adequate assurance of payment if it misses the arbitrary deadline, should be stricken and not permitted in the future.

In addition, Section 366 does not specify the form that an adequate assurance of payment request must take or direct to whom it should be made. Moreover, Section 366(c)(3)(B) provides that evidence of prepetition payment histories and prepetition security are no longer relevant in determining what should constitute adequate assurance of payment. Furthermore, Section 366(c)(2) specifically provides that the debtor is to provide the utility with adequate assurance of payment "that is satisfactory to the utility" within 30 days of the petition date. Accordingly, the Court should strike procedures listed in paragraph 2 above that are either not authorized by Section 366 or are contrary to express provisions of Section 366.

Finally, the Additional Assurance Appeal procedure should also be stricken because Section 366(c)(3) specifically provides a party in interest, which includes the debtor or a utility, the right to seek a modification of any adequate assurance of payment

17

determination after notice and a hearing. There is no need for the Bankruptcy Court to

establish additional procedures when Section 366 already provides the specific remedy.

Therefore, this Court should strike the procedures in third Ordered paragraph of the Final

Utility Order and hold that such procedures are not in accord with Section 366.

**B.      THE BANKRUPTCY COURT ERRED IN HOLDING THAT THE UTILITY
         MOTION WAS A PLEADING FILED PURSUANT TO SECTION
         366(c)(3)(A) AND CONDUCTING AN EVIDENTIARY HEARING AT THE
         FINAL HEARING.**

Section 366(c)(3)(A) provides:

> (3)(A) On request of a party in interest and after notice and a hearing, the
> court may order modification of the amount of an assurance of payment
> under paragraph (2).

With the new 30-day period in Section 366(c), there was certainly sufficient time

for the Debtors to contact their 17 utilities, or at least their two-largest utilities, which are

the Appellants, to discuss their requests for adequate assurance of payment. If the Debtors

believed the requests needed to be modified, the Debtors could have filed a modification

motion (a "Modification Motion") and sought to have it heard before they were required to

pay the requested deposits on the 30th day of the case. If the proper procedures were

followed, the Debtors would have been required to set forth in a pleading why the deposits

requested by Appellants needed to be modified. The Appellants and the Court would then

have had pleadings that set forth the reasons why the Debtors were seeking to modify the

utilities' requests and the parties would have been prepared to address these evidentiary

issues at the hearing on the Modification Motion.

18

Instead of contacting their 17 utilities at the outset of the case to discuss their requests for adequate assurance and determine whether they should file a Modification Motion to seek to modify those requests and possibly have it heard on or before the 30th day of the case, the Debtors chose to ignore the requirements from the outset and filed the Utility Motion seeking to establish their own procedures and to establish what they believe should be adequate assurance of payment. The Debtors should not have been permitted to profit from their flagrant violation of the requirements of Section 366.

If the Court properly followed Section 366, as amended, it would have denied the Utility Motion. The Debtors were not before the Court on a Motion to modify Appellants' requests, instead they were before the Court seeking to have their proposed adequate assurance of payment proposal granted. Moreover, in reaching its decision the Court never addressed why Appellants' two-month deposit requests needed to be modified. Instead, the Bankruptcy Court merely granted the Debtors' Motion.

Contrary to what the Bankruptcy Court may believe, there is a significant difference in the evidentiary standard required to demonstrate why reasonable requests need to be modified and the standard to show why a debtor's proposed adequate assurance of payment proposal is sufficient. Moreover, it is more than form over substance to convert the Debtors' First Day Utility Motion into a Modification Motion. The Debtors had no pleading foundation in the record upon which to present evidence as to why the Appellants' deposit requested should have been modified. By allowing the Debtors to proceed on the Utility Motion filed on the second day of the bankruptcy case, the

19

Bankruptcy Court completely ignored the requirements of Section 366 and the rights of the Appellants.

As demonstrated by the Debtors in the cases they filed in their Designation of the Record, the Bankruptcy Court is routinely not following the new requirements of the statute and this is unacceptable to Appellants. Accordingly, based upon the foregoing instances of reversible errors of law committed by the Bankruptcy Court, this Court should reverse the Final Utility Order as to the Appellants, and instruct the Bankruptcy Court to comply with the express requirements of Section 366 as discussed herein.

C.    **THE BANKRUPTCY COURT COMMITTED REVERSIBLE ERROR, BOTH LEGALLY AND FACTUALLY, BY IMPROPERLY HOLDING THAT APPELLANTS' ADEQUATE ASSURANCE OF PAYMENT REQUEST OF A TWO-MONTH DEPOSIT SHOULD BE MODIFIED TO THE PAYMENT OF A TWO-WEEK DEPOSIT PURSUANT TO THE FINAL UTILITY ORDER.**

As discussed above, the Bankruptcy Court erred by treating the Final Hearing on the Utility Motion as an opportunity to address adequate assurance of payment to the Appellants. Upon making that ruling, the Bankruptcy Court noted that the Debtors' still had the burden of establishing that their utilities, including the Appellants, were being provided with adequate assurance of payment. Final Hearing Tr. at p. 31, lines 14 to 16. The Bankruptcy Court, however, erred because the correct legal standard under Section 366(c)(3)(A) puts the burden on the Debtors to show why Appellants' two-month deposit requests should be modified, not why the Debtors suggested two-week adequate assurance deposits were sufficient.

20

In addition to applying the wrong legal standard, the Debtors failed to put on sufficient evidence to demonstrate why Appellants' two-month requests should be modified. Moreover, there was no mention of the Appellants' two-month requests in the Debtors' limited evidentiary presentation. The Debtors evidentiary presentation consisted of the allegation that "D-I-P financing will provide enough funding to pay all utility bills and in fact all administrative expenses in these cases incurred by the Debtors during these Chapter 11 cases in full and on time." Final Hearing Tr. at p. 32, lines 20 to 23; App. at A-70. The foregoing evidence came in through the proffered testimony of the Debtors' CFO, who merely stated that the Debtors have $2 million in cash on hand and have availability under the DIP Loan of $12 to $13 million (Final Hearing Tr. at p. 32, line 2, through p. 34, line 2; App. at A-70 to A-72). There was no testimony why the Debtors' $2 million in cash and purported ability to borrow money under a DIP Loan justified modifying the Appellants' two-month deposit requests. In fact, the foregoing testimony was objected to by the Appellants because it amounts to nothing more than a promise that they will be paid or that they will be provided an administrative expense priority for their post-petition invoices, which is no longer an acceptable form of adequate assurance of payment under Section 366(c)(1)(B). Final Hearing Tr. at. pp. 34-35; App. at A-72 to A-73. Despite the foregoing, the Bankruptcy Court held:

> I think we have a particularly strong D-I-P loan. We have a Debtor that is operating on a cash flow positive basis. I think it's going to be a – we hope that it's going to be a short and sweet bankruptcy case before we get to a plan confirmation.

Final Hearing Tr. at p. 55, line 24 to p. 56, line 7; App. at A-78.

21

The Debtors had the burden of proof to demonstrate why the Appellants' two-month deposit requests should be modified, but the Debtors failed to provide any evidence to satisfy their burden.  In contrast, the Appellants produced significant evidence justifying their two-month requests, which were based on their state mandated billing cycles and deposit amounts approved by their state utility commission, an independent third-party. Furthermore, the Bankruptcy Court never even addressed why the Appellants' two-month deposit requests should be modified. Accordingly, the Debtors should have been ordered to provide the Appellants with the two-month deposits that they requested pursuant to the express provisions of Section 366.

## CONCLUSION

Pursuant to the express provisions of Section 366, the proper procedure regarding adequate assurance of payment to a utility is for a debtor to provide a utility with adequate assurance of payment requested by the utility within 30 days of the bankruptcy proceeding, and if the debtor wants a modification of the amount of adequate assurance of payment that it has provided to the utility or which has been requested by a utility, the debtor must file a motion to modify the deposit it has paid to the utility or the deposit requested by the utility. Therefore, the Bankruptcy Court committed reversible error as a matter of law by failing to comply with the new requirements of Section 366 of the Bankruptcy Code as follows:

1.    By entering the Bridge Utility Order on an *ex parte* basis, which required the Appellants to retain counsel and file an objection to retain its rights under 11 U.S.C. § 366 (Appellants' Statement of Issue on Appeal No. 1);

22

2.    By approving the adequate assurance of payment procedures in the third

*Ordered* paragraph of the Final Utility Order that violate the provisions of

11 U.S.C. § 366;

3.    By holding that the Debtors' Utility Motion was a pleading filed pursuant to

11 U.S.C. § 366(c)(3)(A) that was ripe for an evidentiary hearing and

adjudication at the January 11, 2007 Final Hearing; and

4.    By holding an evidentiary hearing at the January 11, 2007 Final Hearing on

the Utility Motion and Objection to the Utility Motion filed by the

Appellants.

Additionally, the Bankruptcy Court also committed reversible error, both legally

and factually, in holding that the Appellants' two-week adequate assurance of payment

request should be modified to the payment of a two-week deposit pursuant to the Final

Utility Order.  Although the Debtors had the burden of proof to demonstrate why the

Appellants' two-month deposit requests should be modified, the Debtors failed to provide

any evidence to satisfy their burden.   Accordingly, the Bankruptcy Court should have

ordered the Debtors to provide the Appellants with the two-month deposits that they

requested pursuant to the express provisions of Section 366.

For all of the foregoing reasons, this Court should:

(i)    Reverse the Final Utility Order as to the Appellants and hold that the

procedures approved in the Final Utility Order were not in compliance with the express

requirements of Section 366 as discussed herein;

23

(ii)    Reverse the Final Utility Order and direct the Bankruptcy Court to order the Debtors to pay the two-month deposits requested by the Appellants; and

(iii)    Reverse the Final Utility Order and instruct the Bankruptcy Court that if a debtor wants to modify a utility's adequate assurance of payment request, a debtor must proceed with a motion in compliance with the provisions of Section 366(c)(3).

Dated:  May 14, 2007

STEVENS & LEE, P.C.

/s/ John D. Demmy
John D. Demmy (Del. Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Phone: (302) 425-3308
Fax:  (610) 371-8515
E-mail: jdd@stevenslee.com

-and-

Russell R. Johnson III
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Phone: (804) 749-8861
Fax:  (804) 749-8862
E-mail:  russj4478@aol.com

*Counsel for Appellants New England Gas
Company and Narragansett Electric
Company, both d/b/a National Grid*

24

## CERTIFICATE OF SERVICE

John D. Demmy hereby certifies that on this 14th day of May, 2007, the foregoing *OPENING BRIEF OF APPELLANTS* was served via hand delivery on counsel of record, identified below:

Denise S. Kraft, Esq.
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

/s/ John D. Demmy
John D. Demmy

SL1 722468v1/016001.00009