IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| AMTROL HOLDINGS, INC., *et al.,* | : | Bankruptcy Case No. 06-11446 |
| | : | |
| Debtors. | : | |
| | : | |
| NEW ENGLAND GAS COMPANY, *et al.,* | : | |
| | : | |
| Appellants, | : | |
| | : | Civil Action No. 07-75-GMS |
| | : | |
| AMTROL HOLDINGS, INC., *et al.,* | : | |
| | : | |
| Appellees. | : | |

<u>APPENDIX IN SUPPORT OF OPENING BRIEF</u>

Dated; May 14, 2007

John D. Demmy (I.D. No. 2802)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Phone: (302) 425-3308
Fax: (610) 371-8515
E-mail: jdd@stevenslee.com

-and-

Russell R. Johnson III
2258 Wheatlands Drive
Manakin-Sabot, VA 23103
Phone: (804) 749-8861
Fax: (804) 749-8862
E-mail: russj4478@aol.com

*Counsel for Appellants New England*
*Gas Company and Narragansett Electric*
*Company, both d/b/a National Grid*

# TABLE OF CONTENTS

| Tab | | Page(s) |
|---|---|---|
| 1 | Debtors' Motion For a Bridge Order and a Final Order (I) Prohibiting Utility Companies From Discontinuing, Altering or Refusing Service, (II) Establishing Procedures For Providing Deposits To Requesting Utilities, (III) Deeming Utility Companies To Have Adequate Assurance of Payment, and (IV) Establishing Procedures For Resolving Requests For Additional Assurance Pursuant To 11 U.S.C. §§ 105(a) & 366 (the "Utility Motion") | A-1 to A-23 |
| 2 | Affidavit of Service of the Utility Motion | A-24 to A-33 |
| 3. | Exhibit C to the Utility Motion | A-34 |
| 4. | Bridge Order (I) Prohibiting Utility Companies From Discontinuing, Altering or Refusing Service, (II) Establishing Procedures For Providing Deposits To Requesting Utilities, (III) Deeming Utility Companies To Have Adequate Assurance of Payment, and (IV) Establishing Procedures For Resolving Requests For Additional Assurance Pursuant To 11 U.S.C. §§ 105(a) & 366 | A-35 to A-37 |
| 5. | Objection of New England Gas Company And Narragansett Electric Company, Both d/b/a National Grid To the Utility Motion | A-38 to A-60 |
| 6. | Final Order (I) Prohibiting Utility Companies From Discontinuing, Altering or Refusing Service, (II) Establishing Procedures For Providing Deposits To Requesting Utilities, (III) Deeming Utility Companies To Have Adequate Assurance of Payment, and (IV) Establishing Procedures For Resolving Requests For Additional Assurance Pursuant To 11 U.S.C. §§ 105(a) & 366 | A-61 to A-65 |
| 7. | Excerpts from Transcript of January 11, 2007 Hearing | A-66 to A-80 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMTROL HOLDINGS, INC., *et al.*[1] | : | Case No. 06-_____ (   ) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |

**MOTION OF THE DEBTORS FOR A BRIDGE ORDER AND A FINAL ORDER (I) PROHIBITING UTILITY COMPANIES FROM DISCONTINUING, ALTERING OR REFUSING SERVICE, (II) ESTABLISHING PROCEDURES FOR PROVIDING DEPOSITS TO REQUESTING UTILITIES, (III) DEEMING UTILITY COMPANIES TO HAVE ADEQUATE ASSURANCE OF PAYMENT, AND (IV) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE PURSUANT TO 11 U.S.C. §§ 105(a) & 366**

The above-captioned debtors and debtors-in-possession (each a **"Debtor"** and collectively, the **"Debtors"**) hereby move this Court (the **"Motion"**) for entry of (i) a bridge order (the **"Bridge Order"**) and (ii) a final order (the **"Final Order"**), pursuant to sections 105(a) and 366 of title 11 of the United States Code (the **"Bankruptcy Code"**): (a) prohibiting their utility companies (the **"Utility Companies"**) from discontinuing, altering or refusing service to the Debtors except as set forth herein, (b) establishing procedures whereby the Debtors will provide a Deposit (as defined below) to Requesting Utilities (as defined below), (c) deeming the Utility Companies to have received adequate assurance of payment, and (d) establishing procedures for resolving requests for additional assurance of payment.   In further support of the Motion, the Debtors respectfully state as follows:

---

[1]     Additional debtors include all of Amtrol Holdings, Inc.'s wholly-owned domestic subsidiaries: Amtrol Inc.; Water Soft Inc.; and Amtrol International Investments Inc.

## STATUS OF THE CASE AND JURISDICTION

1.    On December 18, 2006 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" orders, including an order to have these cases jointly administered.

2.    The Debtors continue in possession of their respective properties and continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    No request has been made for the appointment of a trustee or examiner and no official committee has yet been established in these cases.

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a) and 366 of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

5.    Amtrol Holdings, Inc. (**"Holdings"**), together with its subsidiaries (**"Amtrol"** or the **"Company"**), is a leading international designer, manufacturer and marketer of expansion and pressure control products used in water systems applications and selected sectors of the heating, ventilation and air conditioning market.  The Company's principal products include well water accumulators, hot water expansion controls, water treatment products, indirect-fired water heaters and returnable and non-returnable pressure-rated cylinders used primarily to store, transport and dispense refrigerant, heating and cooking gases.  Many of these products are based on a

_504198_3/

technology originated and developed by the Company, involving a pre-pressurized vessel with an internal diaphragm to handle fluids under pressure[2].

## RELIEF REQUESTED

6.      By this Motion, the Debtors seek entry of (i) a Bridge Order, in the form of Exhibit A attached hereto, and (ii) a Final Order, in the form of Exhibit B attached hereto, pursuant to sections 105(a) and 366 of the Bankruptcy Code (a) prohibiting the Utility Companies from discontinuing, altering or refusing service to the Debtors except as set forth herein, (b) establishing procedures whereby the Debtors will provide a Deposit (as defined below) to Requesting Utilities (as defined below), (c) deeming the Utility Companies to have received adequate assurance of payment, and (d) establishing procedures for resolving requests for additional assurance of payment.

7.      In the operation of their manufacturing, distribution and office facilities, the Debtors incur utility expenses in the ordinary course of business for, among other things, water, sewer services, electricity, gas, local telephone service, and waste disposal. On an annual basis, the Debtors spend approximately $3.8 million for various utility services, with an average monthly cost of approximately $320,000. Approximately 27 Utility Companies in the United States provide these utility services. A non-exhaustive list of these Utility Companies is attached hereto as Exhibit C[3].

## ADEQUATE ASSURANCE OF PAYMENT

8.      Section 366(a) of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing service to a debtor for the first thirty (30) days of a bankruptcy

---

[2]      A more detailed overview of the Company is set forth in the Affidavit of Larry T. Guillemette in Support of First Day Motions (the **"Guillemette Affidavit"**) filed contemporaneously herewith.

[3]      Inclusion on the list is not an admission by the Debtors that a particular entity is a utility.

_504198_3/

case (the **"Utilities Stay Period"**).    Upon expiration of the Utilities Stay Period,

however, section 366(b) of the Bankruptcy Code provides that a utility company may

(but need not) terminate services if a debtor has not provided such utility with adequate

assurance of payment.[4]

9.    Prior to the Petition Date, the Debtors were current in the payment of

invoices they received from the Utility Companies.    In addition to this assurance of

payment, and in accordance with section 366(c)(1)(A), the Debtors propose to provide

additional assurance of payment as set forth herein.    Specifically, the Debtors shall

provide to all Utility Companies that send an Additional Payment Request (as defined

below) to the Debtors in the manner set forth below (the **"Requesting Utilities"**), within

ten (10) business days of receiving such Additional Payment Request, a deposit (each

such payment a **"Deposit"**) in an amount equal to the average cost to the Debtors of two

(2) weeks of service from such Requesting Utility over the twelve (12) months preceding

the Petition Date provided that such Requesting Utility does not already hold a deposit

equal to or greater than two (2) weeks of utility services, and provided further that such

utility is not currently paid in advance for its services.[5]    Utility Companies that receive a

Deposit pursuant to the procedures set forth herein shall be collectively referred to as the

**"Advance Payment Utility Companies."**

10.    If a Utility Company requires a Deposit, it must send a written notice of

such request (each an **"Additional Payment Request"**) to the Debtors, with a copy to

---

[4]    Section 366(c)(1)(A) provides that the term "adequate assurance of payment" means (i) a cash deposit;
(ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility
consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor
or the trustee.

[5]    In the event that a Utility Company sends the Debtors an Additional Payment Request prior to the entry
of this Final Order approving the procedures described herein, the Debtors shall have until the entry of the
Final Order to comply with such Additional Payment Request.

undersigned counsel, counsel to the DIP Lenders, counsel to any official committee of unsecured creditors formed in this case (the **"Committee"**) and the office of the United States Trustee within twenty (20) days of the entry of a Final Order of this Court approving the procedures described herein (the **"Additional Payment Request Deadline"**). If a Utility Company fails to send an Additional Payment Request by the Additional Payment Request Deadline, such Utility Company shall have waived its right to request any Deposit from the Debtors and shall be deemed to have received adequate assurance of payment in accordance with section 366(c)(1)(A)(vi) (Utility Companies that do not send Additional Payment Request to the parties set forth above by the Additional Payment Request Deadline shall be collectively referred to herein as the **"Consenting Utility Companies"**).

11.    Finally, in accordance with section 366(c)(2) of the Bankruptcy Code, all Utility Companies shall be authorized to assert that the treatment afforded pursuant to the procedures set forth herein does not constitute satisfactory adequate assurance of payment (each an **"Additional Assurance Appeal"**).  Additional Assurance Appeals may be filed with the Court at any time after a Utility Company becomes an Advance Payment Utility Company or Consenting Utility Company and must (i) be in writing, (ii) set forth the location for which utility services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or other pre-payments or assurances previously provided by the Debtors, (iv) describe in sufficient detail the reason(s) why the treatment afforded pursuant to the procedures set forth herein does not constitute satisfactory adequate assurance of payment, (v) include a proposal for what would constitute adequate assurance from the

Debtors, along with an explanation of why such proposal is reasonable, and (vi) be served upon the Debtors, with a copy to undersigned counsel to the Debtors, the United States Trustee, counsel to any committee formed in these cases and all parties that have requested notice in these cases pursuant to Bankruptcy Rule 2002.

12.    If a Utility Company timely files an Additional Assurance Appeal and the Debtors believe that the treatment requested therein is reasonable, or if the Debtors otherwise reach agreement with such Utility Company on an acceptable form of adequate assurance, the Debtors shall be entitled to comply with such request or otherwise provide additional assurance, and shall be authorized to generally compromise or comply with the requests made in Additional Assurance Appeals, without further notice or order of the Court; provided, however, that the Debtors may not provide additional adequate assurance to a Utility Company either (i) in the amount requested by such Utility Company in its Additional Assurance Appeal or (ii) in an amount agreed to by the Debtors and such Utility Company, without the consent of the DIP Lender, in its sole discretion.

13.    Where a Utility Company files an Additional Assurance Appeal and the Debtors are unable to reach a compromise, a hearing to determine whether additional assurance is necessary (a **"Determination Hearing"**) will be held on either (i) the Debtor's next omnibus hearing date if the Adequate Assurance Appeal is filed on or before the date that is fifteen (15) days prior to such omnibus hearing or (ii) the following omnibus hearing date if the Additional Assurance Appeal is filed thereafter. Pursuant to sections 366(c)(3) and 105(a), all Utility Companies shall be barred from

_504198_3/

A-6

altering, refusing, discontinuing service to, or discriminating against the Debtors until, after a Determination Hearing, the Court issues a final order authorizing such action.

14.    Other than as set forth herein, the Debtors submit that no additional adequate assurance of payment for post-petition utility services is warranted.

15.    Accordingly, the Debtors hereby seek entry of a (i) Bridge Order and (ii) Final Order providing, among other things, that:

    a.    Other than as set forth herein, each Utility Company is prohibited from discontinuing, altering, refusing service to, or discriminating against the Debtors until, after a Determination Hearing, the Court issues a final order authorizing such action;

    b.    Other than pursuant to the procedures set forth herein, the Utility Companies are prohibited from requiring additional adequate assurance of payment from the Debtors whether in connection with any unpaid pre-petition charges or otherwise;

    c.    The Debtors will serve this Motion on the Utility Companies within five (5) business days after the entry of the Bridge Order granting the relief requested herein;

    d.    Utility Companies shall have twenty (20) days from the date of entry of a Final Order of this Court approving the procedures described herein to send an Additional Payment Request to the Debtors as set forth herein;

    e.    The Debtors shall have ten (10) days to comply with each such Additional Payment Request by providing the Requesting Utilities with a deposit in an amount equal to the average cost to the Debtors of two (2) weeks of service from such Requesting Utility over the twelve (12) months preceding the Petition Date;[6]

    f.    Utility Companies that do not file an Additional Payment Request by the Additional Payment Request Deadline shall be deemed to

---

[6]  In the event that a Utility Company sends the Debtors an Additional Payment request prior to the entry of a Final Order of this court approving the procedures described herein, the Debtors shall have until the entry of the Final Order to comply with such Additional Payment Request.

_504198_3/

have received satisfactory adequate assurance of payment in accordance with section 366(c)(1)(A)(vi);[7]

g. If a Utility Company does not believe that it has received satisfactory adequate assurance of payment, regardless of whether it has received a Deposit pursuant to the procedures set forth herein, it may file an Additional Assurance Appeal pursuant to the procedures set forth herein;

h. The Debtors shall be entitled to comply with or compromise Additional Assurance Appeals in their sole discretion and without further notice or order of the Court;

i. Where a Utility Company files an Additional Assurance Appeal and the Debtors are unable to reach a compromise, a Determination Hearing will be held on either (i) the Debtor's next omnibus hearing date of the Additional Assurance Appeal is filed on or before the date that is fifteen (15) days prior to such omnibus hearing or (ii) the following omnibus hearing date if the Additional Assurance Appeal is filed thereafter; and

j. Any Deposit or assurance of payment provided by the Debtors to a Requesting Utility will, to the extent not used by the Utility Company to satisfy a post-petition default, be returned to the Debtors within thirty (30) days after the earlier of: (i) the consummation of a sale of substantially all of the Debtors assets pursuant to section 363 of the Bankruptcy Code; or (ii) the effective date of a plan of reorganization or liquidation in these Chapter 11 cases without further order of the Court, or otherwise as ordered by the Court.

## BASIS FOR RELIEF

16.    This Court has the authority to grant the relief requested herein pursuant to sections 105(a) and 366 of the Bankruptcy Code. Section 366 of the Bankruptcy Code is designed to protect debtors from utility service cutoffs, while also providing utility companies with adequate assurance that debtors will be able to pay for post-petition services. See H.R. Rep. No. 95-595, at 350 (1978), as reprinted in 1978 U.S.C.C.A.N.

---

[7] For those Utility Companies that are subsequently added to Exhibit C, the Debtors shall serve a copy of the Order on such Utility Companies, along with an amended Exhibit C, and such subsequently added entities shall have twenty (20) days from service of the Order to make an Additional Payment Request.

_504198_3/

5963, 6306. In addition, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01, at 105-6 (15th ed. Rev. 2004).

17.     The Debtors submit that the Court should use its section 105(a) powers in these Chapter 11 cases because the relief requested herein is necessary to continue the Debtors' normal business operations and to preserve the Debtors' ability to effectuate an orderly restructuring of their businesses. The relief requested herein is necessary because the Debtors could face a severe cash drain if the Utility Companies condition the provision of post-petition services to the Debtors upon the payment of exorbitantly burdensome and/or unreasonable deposits or other forms of adequate assurance.

18.     As set forth above, section 366(c)(1)(A) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, now provides that "adequate assurance of payment" means (i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee. Accordingly, while the statute now specifies the *form* of assurance that will be deemed to be adequate, it leaves the question of the *amount* of assurance that must be provided squarely within this Court's discretion.

19.     Leaving the determination as to the amount of assurance that a Debtor will need to provide in the discretion of the Court conforms with the pre-amendment caselaw, under which courts generally looked to the facts and circumstances of each

_504198_3/

case to ensure that utility companies were not subjected to an unreasonable risk of nonpayment for post-petition services. See, e.g., In re Keydata Corp., 12 B.R. 156, 158 (1st Cir. BAP 1981). Courts construing section 366(b) of the Bankruptcy Code have long recognized that adequate assurance of payment does not constitute an absolute guaranty of the debtor's ability to pay. See e.g., In re Caldor, Inc. NY, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guaranty of payment.'") (citation omitted); In re Penn Jersey Corp., 72 B.R. 981, 982 (Bankr. E.D.Pa. 1987) (stating that section 366(b) "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances...").

20.    Further, courts have recognized that, in determining what constitutes "adequate" assurance, a bankruptcy court must "focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." Virginia Elec. & Power Co. v. Caldor, Inc-NY, 117 F.3d 646, 650 (2d. Cir. 1997) (quoting Penn Jersey, 72 B.R. at 985).

21.    As set forth above, if Utility Companies are permitted to terminate utility services on the thirty-first (31st) day after the Petition Date, a substantial disruption to the Debtors' operations will occur, and the Debtors' business will be irreparably harmed. To avert a potential disaster, the Debtors would then be forced to pay whatever

_504198_3/

amounts are demanded by the Utility Companies to avoid the cessation of essential utility services and, ultimately, the demise of their business.

22.    The Debtors submit that the procedures set forth herein provide an orderly process for providing adequate assurance of payment to the Utility Companies, without risking irreparable harm to the estates. Because the fundamental nature of section 366 has not been changed by the 2005 amendments—that the Court has discretion to modify any request for assurance of payment and that the assurance of payment need only be adequate in light of the facts and circumstances of a given case—the determination procedures are similar to those approved by courts prior to the 2005 amendments to the Bankruptcy Code.    However, as set forth above, and in accordance with section 366(c)(1)(A) of the Bankruptcy Code, the Debtors are offering to provide Requesting Utilities with a Deposit.

23.    Without the procedures set forth herein, the Debtors could be forced to address numerous requests by Utility Companies in a haphazard manner at a critical period, while the Debtors are trying to reorganize their businesses. The Debtors could be forced to capitulate to almost any demands made by their many Utility Companies, or face the discontinuation of utility service to their manufacturing facilities and a potential shutdown of their businesses. The orderly process contemplated by the procedures set forth herein will avert such a potentially disastrous outcome, enabling the Debtors to make a smooth transition into Chapter 11, while ensuring a fair process for providing adequate assurance to the Utility Companies to the extend required.

24.    Prior to the effective date of the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, procedures similar to the procedures detailed herein,

- 11 -

which afforded Utility Companies their due process rights while protecting debtors' estates from interruption of utility services, have been approved many times by this Court. See, e.g., In re Pliant Corp., Case No. 06-10001 (Bankr. D. Del. Jan 4, 2006); In re FLYi, Inc., Case No. 05-20011 (Bankr. D. Del. Dec. 2, 2005); In re Musicland Holdings Corp., Case No. 06-10064 (Bankr. S.D.N.Y. Feb. 2, 2006); In re Calpine Corp., Case No. 05-60200 (Bankr. S.D.N.Y. Jan. 18, 2006); In re Romacorp., Inc., Case No. 86818-BJH-11 (Bankr. N.D. Tex. Nov. 9, 2005); In re McLeodusa Inc., Case No. 05-63229 (Bankr. N.D. Ill. Oct. 31, 2005).

25.    Accordingly, based on the foregoing facts and authorities, the Debtors believe that granting the relief requested herein will not prejudice the rights of the Utility Companies under section 366 of the Bankruptcy Code.

## NOTICE

26.    Notice of this Motion has been provided to: (a) the United States Trustee for the District of Delaware; (b) those parties listed on the Consolidated List of Creditors Holding Largest Thirty Unsecured Claims Against the Debtors, as identified in their Chapter 11 petitions; (c) counsel to the Debtors' post-petition secured lenders; (d) counsel to the Debtors' pre-petition secured lenders; (e) the Indenture Trustee for the Debtors' $10^{5/8}$% senior subordinated notes; (f) counsel to the Ad Hoc Committee of a majority of the Debtors' $10^{5/8}$% senior subordinated notes; and (g) all Utility Companies. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

- 12 -

**NO PRIOR REQUEST**

27.    The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter a Bridge Order, in substantially the form attached hereto as Exhibit A, and a Final Order, in substantially the form attached hereto as Exhibit B, (i) prohibiting the Utility Companies from discontinuing, altering or refusing service to the Debtors, (ii) deeming the Utility Companies adequately assured of future performance, (iii) establishing procedures for determining requests for additional assurance, and (iv) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      December 18, 2006

            Respectfully submitted,

            EDWARDS ANGELL PALMER & DODGE LLP


            Stuart M. Brown (No. 4050)
            William E. Chipman, Jr. (No. 3818)
            Mark D. Olivere (No. 4291)
            919 North Market Street
            15th Floor
            Wilmington, Delaware 19801
            (302) 777-7770


            *Proposed Counsel to the Debtors and*
            *Debtors-in-Possession*

_504198_3/

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMTROL HOLDINGS, INC., *et al.*[1] | : | Case No. 06-_____ ( ) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |

### BRIDGE ORDER (I) PROHIBITING UTILITY COMPANIES FROM DISCONTINUING, ALTERING OR REFUSING SERVICE, (II) ESTABLISHING PROCEDURES FOR PROVIDING DEPOSITS TO REQUESTING UTILITIES, (III) DEEMING UTILITY COMPANIES TO HAVE ADEQUATE ASSURANCE OF PAYMENT, AND (IV) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE PURSUANT TO 11 U.S.C. §§ 105(a) & 366

Upon consideration of the Motion[2] of the above-captioned debtors and debtors-in-possession for entry of (a) a Bridge Order and (b) a Final Order (i) prohibiting the Utility Companies from discontinuing, altering or refusing service to the Debtors, (ii) establishing procedures whereby the Debtors will provide Deposits to Requesting Utilities, (iii) deeming the Utility Companies to have received adequate assurance of payment, and (iv) establishing procedures for determining requests for additional assurances of payment; and upon consideration of the Motion and all pleadings related thereto, including the Guillemette Affidavit; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.§§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C.

---

[1]    Additional debtors include all of Amtrol Holdings, Inc.'s wholly-owned domestic subsidiaries: Amtrol Inc.; Water Soft Inc.; and Amtrol International Investments Inc.

[2]    All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

§§ 1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation thereon, and good and sufficient cause appearing therefore; it is hereby

ORDERED, that until such time as the Final Order is entered by the Court, all Utility Companies are prohibited from discontinuing, altering or refusing service to the Debtors on account of any unpaid pre-petition charges, or discriminating against the Debtors, or requiring payment of a deposit or receipt of any other security for continued service as a result of the Debtors' bankruptcy filing or any outstanding pre-petition invoices other than as set forth in the Motion; and it is further

ORDERED, that notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral; and it is further

ORDERED, that the Utility Motion and this Bridge Order shall be served on each Utility Company the Debtors believe could be affected by the Utility Motion and all other parties required to receive service under Del. Bankr. L.R. 2002-1(b) within five (5) days of entry of this Bridge Order; and it is further

_504198_3/

ORDERED, that the deadline by which objections to the Utility Motion and the Final Order must be filed is _____, at _____ p.m. (ET). A final hearing, if required, on the Utility Motion will beheld on _____ at _____ a.m. (ET). If no objections are filed to the Utility Motion, the Court may enter the Final Order without further notice or hearing.

Dated: _____, 2006
        Wilmington, Delaware

_____
United States Bankruptcy Judge

_504198_3/

# Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| AMTROL HOLDINGS, INC., *et al.*[1] | : | Case No. 06-_____ ( ) |
| Debtors. | : | (Jointly Administered) |
| | : | |

## FINAL ORDER (I) PROHIBITING UTILITY COMPANIES FROM DISCONTINUING, ALTERING OR REFUSING SERVICE, (II) ESTABLISHING PROCEDURES FOR PROVIDING DEPOSITS TO REQUESTING UTILITIES, (III) DEEMING UTILITY COMPANIES TO HAVE ADEQUATE ASSURANCE OF PAYMENT, AND (IV) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE PURSUANT TO 11 U.S.C. §§ 105(A) & 366

Upon the motion (the **"Motion"**)[2] of the above-captioned debtors and debtors-in-possession for entry of an order pursuant to sections 105(a) and 366 of the Bankruptcy Code: (i) prohibiting the Utility Companies from discontinuing, altering or refusing service to the Debtors, (ii) establishing procedures whereby the Debtors will provide Deposits to Requesting Utilities, (iii) deeming the Utility Companies to have received adequate assurance of payment, and (iv) establishing procedures for determining requests for additional assurances of payment; and due and proper notice of the Motion having been given; and it appearing that no other or further notice is required; and upon consideration of the Motion and all pleadings related thereto, including the Guillemette Affidavit; and it appearing that the Court has jurisdiction to consider the Motion in

---

[1]    Additional debtors include all of Amtrol Holdings, Inc.'s wholly-owned domestic subsidiaries: Amtrol Inc.; Water Soft Inc.; and Amtrol International Investments Inc.

[2]    All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

_504198_3/

accordance with 28 U.S.C.§§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation thereon, and good and sufficient cause appearing therefore; it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that absent any further order of the Court each Utility Company is hereby prohibited from (i) discontinuing, altering, or refusing service to the Debtors on account of any unpaid pre-petition charges or otherwise, or (ii) requiring the payment of a security deposit or receipt of any other security from the Debtors in connection with any unpaid pre-petition charges except as set forth herein and in the Motion; and it is further

ORDERED, that the procedures for determining requests for additional assurance of payment as described in the Motion are approved as follows:

a)    Other than as set forth herein, each Utility Company is prohibited from discontinuing, altering, refusing service to, or discriminating against the Debtors until, after a Determination Hearing, this Court issues a final order authorizing such action;

b)    Other than pursuant to the procedures set forth herein and in the Motion, the Utility Companies are prohibited from requiring additional adequate assurance of payment from the Debtors whether in connection with any unpaid pre-petition charges or otherwise;

c)    Within five (5) days after the entry of this Final Order granting the relief requested herein, the Debtors shall serve this Final Order on the Utility Companies;

d)    Utility Companies shall have twenty (20) days from the date of entry of this Final Order approving the procedures described herein to send an Additional Payment Request in the manner set forth in the Motion;

- 2 -

_504198_3/

A-20

e)    The Debtors shall have ten (10) days to comply with each such Additional Payment Request by providing Requesting Utilities with a Deposit in an amount equal to the average cost to the Debtors of two weeks of service from such Requesting Utility over the twelve (12) months preceding the Petition Date provided that such Requesting Utility does not already hold a deposit equal to or greater than two (2) weeks of utility services, and provided further that such utility is not currently paid in advance for its services.[3]

f)    Utility Companies that do not file an Additional Payment Request by the Additional Payment Request Deadline shall be deemed to have received satisfactory adequate assurance of payment in accordance with section 366(c)(1)(A)(vi);[4]

g)    If a Utility Company does not believe that it has received satisfactory adequate assurance of payment, regardless of whether it has received a Deposit, pursuant to the procedures set forth herein and in the Motion, it may file an Additional Assurance Appeal pursuant to the procedures set forth herein and in the Motion.  Specifically, the Additional Assurance Appeal may be filed with this Court at any time after a Utility Company becomes an Advance Payment Utility Company or Consenting Utility Company and must (i) be in writing, (ii) set forth the location for which utility services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or other pre-payments or assurances previously provided by the Debtors, (iv) describe in sufficient detail the reason(s) why the treatment afforded pursuant to the procedures set forth herein does not constitute satisfactory adequate assurance of payment, and (v) include a proposal for what would constitute adequate assurance from the Debtors, along with an explanation of why such proposal is reasonable;

h)    The Debtors shall be entitled to comply with or compromise, Additional Assurance Appeals in their sole discretion and without further notice or order of the Court; provided, however, that the Debtors may not provide additional adequate assurance to a Utility Company either (i) in the amount requested by such Utility Company in its Additional Assurance Appeal or (ii) in an amount agreed to by the Debtors and such Utility Company, without the consent of the DIP Lender, in its sole discretion;

---

[3]    In the event that a Utility Company sends the Debtors an Additional Payment Request prior to the entry of this Final Order approving the procedures described herein, the Debtors shall have until the entry of this Final Order to comply with such Additional Payment Request.

[4]    For those Utility Companies that are subsequently added to Exhibit C, the Debtors shall serve a copy of the Order on such Utility Companies, along with an amended Exhibit C, and such subsequently added entities shall have twenty (20) days from service of the Order to make an Additional Payment Request.

_504198_3/

i)      Where a Utility Company filed an Additional Assurance Appeal and the Debtors are unable to reach a compromise, a hearing to determine whether additional assurance is necessary (a **"Determination Hearing"**) will be held on either (i) the Debtor's next omnibus hearing date if the Additional Assurance Appeal is filed on or before the date that is fifteen (15) days prior to such omnibus hearing or (ii) the following omnibus hearing date if the Additional Assurance Appeal is filed thereafter;

j)      Any Deposit or assurance of payment provided by the Debtors to a Requesting Utility will, to the extent not used by the Utility Company to satisfy a post-petition default, be returned to the Debtors within thirty (30) days after the earlier of: (i) the consummation of a sale of substantially all of the Debtors assets pursuant to section 363 of the Bankruptcy Code; or (ii) the effective date of a plan of reorganization or liquidation in these Chapter 11 cases without further order of the Court, or otherwise as ordered by the Court.

ORDERED, that the Debtors are authorized, in their sole discretion, to amend Exhibit C to the Motion to add or delete any Utility Company, and this Order shall apply to any such Utility Company that is subsequently added to Exhibit C to the Motion; and it is further

ORDERED, that notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral; and it is further

ORDERED, that the Debtors are hereby authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

_504198_3/

ORDERED, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2006
         Wilmington, Delaware


_____
United States Bankruptcy Judge

_504198_3/

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

———————————————————— x
                                :

In re                      :   Chapter 11

AMTROL HOLDINGS, INC., *et al.*[1]   :   **Case No. 06-11446 (KG)**

                      :   (Jointly Administered)

          Debtors.     :

———————————————————— x

## AFFIDAVIT OF SERVICE

   I, Staci McFadden, hereby certify that, on the 19th day of December, 2006, I caused the following documents to be served via overnight mail upon the service list attached hereto as **Exhibit A** via facsimile upon the service list attached hereto as **Exhibit B**; and via email notification upon the service list attached hereto as **Exhibit C**;

- **Motion of the Debtors for a Bridge Order and a Final Order (I) Prohibiting Utility Companies from Discontinuing, Altering or Refusing Service, (II) Establishing Procedures for Providing Deposits to Requesting Utilities, (III) Deeming Utility Companies to Have Adequate Assurance of Payment, and (IV) Establishing Procedures for Resolving Requests for Additional Assurance Pursuant to 11 U.S.C. §§ 105(a) and 366 [Docket No. 23]**

---

[1]   Additional debtors include all of Amtrol Holdings, Inc.'s wholly-owned domestic subsidiaries: Amtrol Inc.; Water Soft Inc.; and Amtrol International Investments Inc.

- **Exhibit C to Motion of the Debtors for a Bridge Order and a Final Order (I) Prohibiting Utility Companies from Discontinuing, Altering or Refusing Service, (II) Establishing Procedures for Providing Deposits to Requesting Utilities, (III) Deeming Utility Companies to Have Adequate Assurance of Payment, and (IV) Establishing Procedures for Resolving Requests for Additional Assurance Pursuant to 11 U.S.C. §§ 105(a) and 366 [Docket No. 29]**

Dated:  December 19, 2006

_____
                            Staci McFadden

Kurtzman Carson Consultants LLC
12910 Culver Blvd., Suite I
Los Angeles, CA 90066
(310) 823-9000

State of California, County of Los Angeles

Subscribed and sworn to before me on this 19th day of December, 2006, by Staci McFadden, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal.

Signature  _____
                     Amy Huh

AMY LEE HUH
Commission # 1559565
Notary Public - California
Los Angeles County
My Comm. Expires Mar 15, 2009

2

A-25

# EXHIBIT A

EXHIBIT A

| NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| ACCURATE MOLDED PRODUCTS | ATTN: HOWARD DEVINE | 469 WARWICK INDUSTRIAL DRIVE | | WARWICK | RI | 02886-2460 | |
| ADMIRAL METALS INCORPORATED | ATTN: KRISTIN WALKER | 11 FORBES ROAD | | WOBURN | MA | 01801 | |
| ALLIED WASTE SERVICES #050 | | 260 W DICKMAN ST. | | BALTIMORE | MD | 21230-5005 | |
| AMERADA HESS CORP | | PO BOX 905243 | | CHARLOTTE | NC | 28290-5243 | |
| AMERADA HESS CORPORATION | ATTN: MARY YOUNG | ONE HESS PLAZA | | WOODBRIDGE | NJ | 07095 | |
| ARCH WIRELESS | | PO BOX 4062 | | WOBURN | MA | 01888-4062 | |
| AT&T | | PO BOX 13134 | | NEWARK | NJ | 07101-5634 | |
| AT&T | | PO BOX 830019 | | BALTIMORE | MD | 21283-0019 | |
| AT&T | | PO BOX 830022 | | BALTIMORE | MD | 21283-0022 | |
| AT&T | | PO BOX 830120 | | BALTIMORE | MD | 21283-0120 | |
| ATMOS ENERGY | | PO BOX 9001949 | | LOUISVILLE | KY | 40290-1949 | |
| BALTIMORE GAS & ELECTRIC | | PO BOX 1475 | | BALTIMORE | MD | 21203 | |
| BALTIMORE METERED WATER | | DEPARTMENT OF FINANCE | 200 HOLLIDAY ST. | BALTIMORE | MD | 21202 | |
| BAMBERGER POLYMERS INC | ATTN: GREG FALCONE | TWO JERICHO PLAZA, SUITE 109 | | JERICHO | NY | 11753 | |
| BARCLAYS CAPITAL | JASON WHITE | INVESTMENT BANKING DIV. | 200 PARK AVE, 4TH FL | NEW YORK | NY | 10166 | |
| BARCLAYS CAPITAL | JOSEPH JORDAN | INVESTMENT BANKING DIV. | 200 PARK AVE, 4TH FL | NEW YORK | NY | 10166 | |
| BELL SOUTH | | PO BOX 70529 | | CHARLOTTE | NC | 28272-0529 | |
| BLUE CROSS BLUE SHIELD OF RHODE ISLAND | ATTN: CELINA ROSA | 444 WESTMINSTER STREET | | PROVIDENCE | RI | 02903-3279 | |
| CDF CORPORATION | ATTN: JOE SULLIVAN | 77 INDUSTRIAL PARK ROAD | | PLYMOUTH | MA | 02360 | |
| CINGULAR | | 17000 CANTRELL RD., 1ST FL. | | LITTLE ROCK | AR | 72223-4266 | |
| CINGULAR | | PO BOX 7697 | | BALTIMORE | MD | 21287-1987 | |
| COMMERCIAL METAL FORMING | ATTN: AL MILLER | 1775 LOGAN AVENUE | | YOUNGSTOWN | OH | 44501 | |
| COMMERCIAL WASTE DISPOSAL | | PO BOX 7003 | | MAYFIELD | KY | 42066-7003 | |
| CRYSTAL STAMPING CORPORATION | | PO BOX I | | PAWTUCKET | RI | 02861 | |
| DENMAN & DAVIS | ATTN: ROB BOUCHER | 1 BROAD STREET | PO BOX 1979 | CLIFTON | NJ | 07015 | |
| FOOTHILL CAPITAL CORP. | C/O SCHULTE ROTH & ZABEL LLP | KIRBY CHIN | 919 THIRD AVE. | NEW YORK | NY | 10022 | |
| FW WEBB CO | ATT: TED BRIAN | 160 MIDDLESEX TURNPIKE | | BEDFORD | MA | 01730 | |
| GOODYEAR TIRE & RUBBER CO | ATTN: BOB LYTLE | PO BOX 3571 | | AKRON | OH | 44309-3571 | |
| GUNTHER NEUMANN | | 1 RAVENS WAY | | WEST WARWICK | RI | 02893 | |
| HINDLEY MANUFACTURING CO | ATTN: CHARLES HINDLEY | 9 HAVENS STREET | PO BOX 38 | CUMBERLAND | RI | 02864 | |
| INTERNAL REVENUE SERVICE | | 31 HOPKINS PLAZA | ROOM 1150 | BALTIMORE | MD | 21201 | |
| KENNETH KIRK | | 1211 COMMODOR DRIVE | | NEW SMYMA BEACH | FL | | |
| KENT COUNTY WATER AUTHORITY | | PO BOX 192 | | WEST WARWICK | RI | 02893-0192 | |
| LATHAM & WATKINS LLP | ALAN LEAVITT | 633 W FIFTH ST., STE. 4000 | | LOS ANGELES | CA | 90071-2007 | |
| LATHAM & WATKINS LLP | ERIKA RUIZ | 885 THIRD AVE. | | NEW YORK | NY | 10022-4834 | |
| LATHAM & WATKINS LLP | MICHAEL RIELA | 885 THIRD AVE. | | NEW YORK | NY | 10022-4834 | |
| LATHAM & WATKINS LLP | MITCH DAVIDSON | 885 THIRD AVE. | | NEW YORK | NY | 10022-4834 | |
| LATHAM & WATKINS LLP | RONAN WICKS | 885 THIRD AVE. | | NEW YORK | NY | 10022-4834 | |
| LINCOLN ELECTRIC | ATTN: JASON DODY | 22801 SAINT CLAIR AVENUE | | CLEVELAND | OH | 44117-1199 | |
| LUTCO INC | ATTN: DAVID GRANQUIST | THOMAS SMITH DIVISION | 677 CAMBRIDGE STREET | WORCESTER | MA | 01610 | |
| MACSTEEL SERVICE CENTERS USA | ATTN: BILL LOVELAND | EASTERN DIVISION | 385 WEST HOLLIS STREET | NASHUA | NH | 03060 | |
| MAFCO INCORPORATED | ATTN: BOB FLANAGAN | 1203 NORTH 6TH STREET | PO BOX 1058 | ROGERS | AR | 72757 | |
| METALS USA | ATTN: JIM HOFFMAN | 10 TOWER ROAD | | SEEKONK | MA | 02771 | |
| NATIONAL GRID | | PO BOX 1048 | | WOBURN | MA | 01807-1048 | |
| NATIONAL GRID | PROCESSING CENTER | | | WOBURN | MA | 01807-0049 | |
| NEW ENGLAND PLASTICS | ATTN: JIM OSBORNE | 310 SALEM STREET | | WOBURN | MA | 01801 | |
| NEWPORT GLOBAL ADVISORS | RYAN LANGDON | 21 WATERWAY ROAD, SUITE 150 | | THE WOODLANDS | TX | 77380 | |

In re Amtrol Holdings, Inc., et al.
Case No. 06-11446

1 of 2

12/19/2006
5:52 PM

A-27

EXHIBIT A

| NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| OFFICE OF THE UNITED STATES TRUSTEE | J. CALEB BOGGS FEDERAL BUILDING | SECOND FLOOR, ROOM 2112 | 2844 KING STREET, SUITE 2207 | WILMINGTON | DE | 19801 | |
| PADUCAH POWER SYSTEM | | 1500 BROADWAY | | PADUCAH | KY | 42001 | |
| PADUCAH WATER WORKS | | PO BOX 2477 | | PADUCAH | KY | 42002-2477 | |
| PALLET ONE | ATTN: SCOTT CARON | DBA ISAACSON LUMBER COMPANY | PO BOX L | LIVERMORE FALLS | ME | 04254 | |
| PAUL, HASTINGS, JANOFSKY & WALKER, LLP | JESSE AUSTIN | 600 PEACHTREE ST., N.E., 24TH FL. | | ATLANTA | GA | 30308 | |
| PAUL, HASTINGS, JANOFSKY & WALKER, LLP | JOHN HILSON | 515 S. FLOWER ST. | | LOS ANGELES | CA | 90071 | |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | ANDREW ROSENBERG | 1285 AVENUE OF THE AMERICAS | | NEW YORK | NY | 10019-6064 | |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | KELLEY CORNISH | 1285 AVENUE OF THE AMERICAS | | NEW YORK | NY | 10019-6064 | |
| RAND WHITNEY CONTAINER | ATTN: ADAM TOMINSKY | 455 NARRAGANSETT PARK DRIVE | | PAWTUCKET | RI | 02861 | |
| SCHULTE ROTH & ZABEL LLP | LAWRENCE GELBER | 919 THIRD AVE. | | NEW YORK | NY | 10022 | |
| SCHULTE ROTH & ZABEL LLP | TODD MATRAS | 919 THIRD AVE. | | NEW YORK | NY | 10022 | |
| SECRETARY OF STATE | DIVISION OF CORPORATIONS FRANCHISE TAX | PO BOX 7040 | | DOVER | DE | 19903 | |
| SECRETARY OF TREASURY | | PO BOX 7040 | | DOVER | DE | 19903 | |
| SECURITIES & EXCHANGE COMMISSION | | 15TH & PENNSYLVANIA AVE NW | | WASHINGTON | DC | 20020 | |
| SECURITIES & EXCHANGE COMMISSION | | NEW YORK REGIONAL OFFICE | 233 BROADWAY | NEW YORK | NY | 10279 | |
| SMURFIT STONE | | 700 GARRETT PARKWAY | | LEWISBURG | TN | 37091 | |
| SPRAYLAT CORPORATION | ATTN: DAVID BROOKS | 143 SPARKS AVENUE | | PELHAM | NY | 10803 | |
| SPRINT | | PO BOX 4181 | | CAROL STREAM | IL | 60197-4181 | |
| SPRINT / EMBARQ | | 720 WESTERN BLVD. | | TARBORO | NC | 27886 | |
| SPRINT / EMBARQ | | PO BOX 660068 | | DALLAS | TX | 75266-0068 | |
| THE BANK OF NEW YORK TRUST COMPANY NA | CORPORATE TRUST ADMINISTRATION | ATTN PETER MURPHY VP | 222 BERKELEY ST 2ND FL | BOSTON | MA | 02116 | |
| THE BANK OF NEW YORK, TRUST COMPANY N.A. | ATTN: PETER MURPHY, VICE PRESIDENT | 222 BERKELEY STREET | | BOSTON | MA | 02116 | |
| THONA CANADA | ATTN: DON PICARD | 1635 BOUL INDUSTRIEL | | MAGOG | PQ | J1X 5B3 | CANADA |
| VERIZON | | PO BOX 4100 | | WORCESTER | MA | 01654-0001 | |
| VERIZON | | PO BOX 17577 | | ALBANY | NY | 12250-1100 | |
| VERIZON | | 575 WEST ST., STE. 210 | | BALTIMORE | MD | 21297-0513 | |
| VERIZON | | PO BOX 498 | | MANSFIELD | MA | 02048 | |
| WASTE MANAGEMENT OF RI | | 160 RELIABLE PARKWAY | | CHICAGO | IL | 60686 | |
| WEST WARWICK SEWER COMMISSION | ATTN: SCOTT ANNEN | | | WEST WARWICK | RI | 02893-0498 | |
| WIELAND AMERICA INC | | 2546 MILLIKIN PARKWAY | | DECATUR | IL | 62526 | |
| WIT & CO LTD | | | | | | | |
| WORKFLOW ONE | | CREDIT DEPT | 220 E MONUMENT AVENUE | DAYTON | OH | 45402-1223 | |
| YOSHIKAZU FUJIYOSHI | ATTN: LISA CASSIDY | 318 HEMLOCK DRIVE | | EAST GREENWICH | RI | 02818 | |

In re Amtrol Holdings, Inc., et al.
Case No. 06-11446

2 of 2

12/19/2006
5:52 PM

A-28

# EXHIBIT B

EXHIBIT B

| NAME | NOTICE NAME | FAX |
|------|-------------|-----|
| ACCURATE MOLDED PRODUCTS | ATTN: HOWARD DEVINE | 401-739-0150 |
| ADMIRAL METALS INCORPORATED | ATTN: KRISTIN WALKER | 781-937-4469 |
| ALLIED WASTE SERVICES #050 | | 410-712-9305 |
| AMERADA HESS CORP | | 508-357-4730 |
| AMERADA HESS CORPORATION | ATTN: MARY YOUNG | 866-239-5671 |
| ARCH WIRELESS | | 270-575-4009 |
| AT&T | | 866-239-5671 |
| AT&T | | 800-396-8675 |
| AT&T | | 401-272-0506 |
| AT&T | | 866-214-3740 |
| ATMOS ENERGY | | 800-236-8781 |
| BALTIMORE GAS & ELECTRIC | | 800-236-8781 |
| BALTIMORE METERED WATER | | 800-555-9755 |
| BAMBERGER POLYMERS INC | ATTN: GREG FALCONE | 516-622-3610 |
| BARCLAYS CAPITAL | JASON WHITE | 212-412-7353 |
| BARCLAYS CAPITAL | JOSEPH JORDAN | 212-412-7680 |
| BELL SOUTH | | 866-359-7637 |
| BLUE CROSS BLUE SHIELD OF RHODE ISLAND | ATTN: CELINA ROSA | 401-459-1885 |
| CDF CORPORATION | ATTN: JOE SULLIVAN | 508-747-3307 |
| CINGULAR | | 866-774-3914 |
| CINGULAR | | 931-221-3084 |
| COMMERCIAL METAL FORMING | ATTN: AL MILLER | 330-740-8229 |
| COMMERCIAL WASTE DISPOSAL | | 931-221-3084 |
| CRYSTAL STAMPING CORPORATION | ATTN: JIM DIMILLIO | 401-727-3846 |
| DENMAN & DAVIS | ATTN: ROB BOUCHER | 973-684-8723 |
| FOOTILL CAPITAL CORP. | C/O SCHULTE ROTH & ZABEL LLP | 212-593-5955 |
| FW WEBB CO | ATT: TED BRIAN | 978-937-5522 |
| GOODYEAR TIRE & RUBBER CO | ATTN: BOB LYTLE | 330-796-8161 |
| HINDLEY MANUFACTURING CO | ATTN: CHARLES HINDLEY | 401-722-3083 |
| LATHAM & WATKINS LLP | ALAN LEAVITT | 213-891-8763 |
| LATHAM & WATKINS LLP | ERIKA RUIZ | 212-751-4864 |
| LATHAM & WATKINS LLP | MICHAEL RIELA | 212-751-4864 |
| LATHAM & WATKINS LLP | MITCH SEIDER | 212-751-4864 |
| LATHAM & WATKINS LLP | RONAN WICKS | 212-751-4864 |
| LINCOLN ELECTRIC | ATTN: JASON DODY | 216-383-4720 |
| LUTCO INC | ATTN: DAVID GRANQUIST | 508-799-6848 |
| MACSTEEL SERVICE CENTERS USA | ATTN: BILL LOVELAND | 603-886-0828 |
| MAFCO INCORPORATED | ATTN: BOB FLANAGAN | 479-631-3896 |
| METALS USA | ATTN: JIM HOFFMAN | 508-399-6120 |
| NATIONAL GRID | | 252-824-2737 |
| NATIONAL GRID | PROCESSING CENTER | 866-833-5023 |
| NEW ENGLAND PLASTICS | ATTN: JIM OSBORNE | 781-933-2726 |
| OFFICE OF THE UNITED STATES TRUSTEE | J. CALEB BOGGS FEDERAL BUILDING | 302-573-6497 |
| PADUCAH POWER SYSTEM | | 877-245-4058 |
| PALLET ONE | ATTN: SCOTT CARON | 207-897-5713 |
| PAUL, HASTINGS, JANOFSKY & WALKER, LLP | JESSE AUSTIN | 404-685-5208 |
| PAUL, HASTINGS, JANOFSKY & WALKER, LLP | JOHN HILSON | 213-996-3300 |
| RAND WHITNEY CONTAINER | ATTN: ADAM TOMINSKY | 401-723-3710 |
| SCHULTE ROTH & ZABEL LLP | LAWRENCE GELBER | 212-593-5955 |
| SCHULTE ROTH & ZABEL LLP | TODD MATRAS | 212-593-5955 |
| SMURFIT STONE | ATTN: WILL CHILDERS | 931-359-6670 |

In re Amtrol Holdings, Inc., et al.
Case No. 06-11446

1 of 2

12/19/2006

A-30

EXHIBIT B

| NAME | NOTICE NAME | FAX |
|---|---|---|
| SPRAYLAT CORPORATION | ATTN: DAVID BROOKS | 914-712-2838 |
| SPRINT | | 800-836-0914 |
| SPRINT / EMBARQ | | 410-396-5531 |
| SPRINT / EMBARQ | | 401-823-4810 |
| THE BANK OF NEW YORK TRUST COMPANY NA | CORPORATE TRUST ADMINISTRATION | 617-351-2401 |
| THE BANK OF NEW YORK, TRUST COMPANY N.A. | ATTN: PETER MURPHY, VICE PRESIDENT | 617-351-2401 |
| THONA CANADA | ATTN: DON PICARD | 819-843-3501 |
| VERIZON | | 270-443-9627 |
| VERIZON | | 401-822-9263 |
| VERIZON | | 410-347-5199 |
| WASTE MANAGEMENT OF RI | | 270-247-8986 |
| WEST WARWICK SEWER COMMISSION | | 508-337-1223 |
| WIELAND AMERICA INC | ATTN: SCOTT ANNEN | 847-537-4085 |
| WIT & CO LTD | | 217-423-0883 |
| WORKFLOW ONE | ATTN: LISA CASSIDY | 937-913-3040 |

In re Amtrol Holdings, Inc., et al.
Case No. 06-11446                        2 of 2                        12/19/2006

A-31

# EXHIBIT C

EXHIBIT C

| NAME | NOTICE NAME | EMAIL |
|------|-------------|-------|
| ARCH WIRELESS | | customer care@usamobility.com |
| BARCLAYS CAPITAL | JASON WHITE | jason.white@barclayscapital.com |
| BARCLAYS CAPITAL | JOSEPH JORDAN | joseph.jordan@barclayscapital.com |
| FOOTILL CAPITAL CORP. | C/O SCHULTE ROTH & ZABEL LLP | kirby.chin@srz.com |
| LATHAM & WATKINS LLP | ALAN LEAVITT | alan.leavitt@lw.com |
| LATHAM & WATKINS LLP | ERIKA RUIZ | erika.ruiz@lw.com |
| LATHAM & WATKINS LLP | MICHAEL RIELA | michael.riela@lw.com |
| LATHAM & WATKINS LLP | MITCH SEIDER | mitchell.seider@lw.com |
| LATHAM & WATKINS LLP | RONAN WICKS | ronan.wicks@lw.com |
| NATIONAL GRID | PROCESSING CENTER | Customerservice@us.ngrid.com |
| NEW ENGLAND PLASTICS | ATTN: JIM OSBORNE | |
| NEWPORT GLOBAL ADVISORS | RYAN LANGDON | rlangdon@ngalp.com |
| PAUL, HASTINGS, JANOFSKY & WALKER, LLP | JESSE AUSTIN | jessaustin@paulhastings.com |
| PAUL, HASTINGS, JANOFSKY & WALKER, LLP | JOHN HILSON | johnhilson@paulhastings.com |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | ANDREW ROSENBERG | arosenberg@paulweiss.com |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | KELLEY CORNISH | kcornish@paulweiss.com |
| RAND WHITNEY CONTAINER | ATTN: ADAM TOMINSKY | |
| SCHULTE ROTH & ZABEL LLP | LAWRENCE GELBER | lawrence.gelber@srz.com |
| SCHULTE ROTH & ZABEL LLP | TODD MATRAS | todd.matras@srz.com |

In re Amtrol Holdings, Inc., et al.
Case No. 06-11446

1 of 1

12/19/2006

A-33

Exhibit C

| CREDITOR NAME | CREDITOR NOTICE NAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| ALLIED WASTE SERVICES #050 | | 260 W DICKMAN ST. | | BALTIMORE | MD | 21230-5005 |
| AMERADA HESS CORP | | PO BOX 905243 | | CHARLOTTE | NC | 28290-5243 |
| ARCH WIRELESS | | PO BOX 4062 | | WOBURN | MA | 01888-4062 |
| AT&T | | PO BOX 13134 | | NEWARK | NJ | 07101-5634 |
| AT&T | | PO BOX 830019 | | BALTIMORE | MD | 21283-0019 |
| AT&T | | PO BOX 830022 | | BALTIMORE | MD | 21283-0022 |
| AT&T | | PO BOX 830120 | | BALTIMORE | MD | 21283-0120 |
| ATMOS ENERGY | | PO BOX 9001949 | | LOUISVILLE | KY | 40290-1949 |
| BALTIMORE GAS & ELECTRIC | | PO BOX 1475 | | BALTIMORE | MD | 21203 |
| BALTIMORE METERED WATER | | DEPARTMENT OF FINANCE | 200 HOLLIDAY ST. | BALTIMORE | MD | 21202 |
| BELL SOUTH | | PO BOX 70529 | | CHARLOTTE | NC | 28272-0529 |
| CINGULAR | | PO BOX 17587 | | BALTIMORE | MD | 21297-1587 |
| CINGULAR | | 17000 CANTRELL RD., 1ST FL. | | LITTLE ROCK | AR | 72223-4266 |
| COMMERCIAL WASTE DISPOSAL | | PO BOX 7003 | | MAYFIELD | KY | 42066-7003 |
| KENT COUNTY WATER AUTHORITY | | PO BOX 192 | | WEST WARWICK | RI | 02893-0192 |
| NATIONAL GRID | PROCESSING CENTER | | | WOBURN | MA | 01807-0049 |
| NATIONAL GRID | | PO BOX 1048 | | WOBURN | MA | 01807-1048 |
| PADUCAH POWER SYSTEM | | 1500 BROADWAY | PO BOX 180 | PADUCAH | KY | 42001 |
| PADUCAH WATER WORKS | | PO BOX 2477 | | PADUCAH | KY | 42002-2477 |
| SPRINT | | PO BOX 4181 | | CAROL STREAM | IL | 60197-4181 |
| SPRINT / EMBARQ | | 720 WESTERN BLVD. | | TARBORO | NC | 27886 |
| SPRINT / EMBARQ | | PO BOX 660068 | | DALLAS | TX | 75266-0068 |
| VERIZON | | PO BOX 1 | | WORCESTER | MA | 01654-0001 |
| VERIZON | | PO BOX 1100 | | ALBANY | NY | 12250-1100 |
| VERIZON | | PO BOX 17577 | | BALTIMORE | MD | 21297-0513 |
| WASTE MANAGEMENT OF RI | | 575 WEST ST., STE. 210 | | MANSFIELD | MA | 02048 |
| WEST WARWICK SEWER COMMISSION | | PO BOX 498 | | WEST WARWICK | RI | 02893-0498 |

12/14/2006
4:41 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMTROL HOLDINGS, INC., *et al.*[1] | : | Case No. 06-11446 (KG) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | RE: Docket No. 23 |

**BRIDGE ORDER (I) PROHIBITING UTILITY COMPANIES
FROM DISCONTINUING, ALTERING OR REFUSING SERVICE,
(II) ESTABLISHING PROCEDURES FOR PROVIDING DEPOSITS TO REQUESTING
UTILITIES, (III) DEEMING UTILITY COMPANIES TO HAVE ADEQUATE
ASSURANCE OF PAYMENT, AND (IV) ESTABLISHING PROCEDURES FOR
<u>RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE PURSUANT TO 11 U.S.C.</u>
<u>§§ 105(a) & 366</u>**

Upon consideration of the Motion[2] of the above-captioned debtors and debtors-in-possession for entry of (a) a Bridge Order and (b) a Final Order (i) prohibiting the Utility Companies from discontinuing, altering or refusing service to the Debtors, (ii) establishing procedures whereby the Debtors will provide Deposits to Requesting Utilities, (iii) deeming the Utility Companies to have received adequate assurance of payment, and (iv) establishing procedures for determining requests for additional assurances of payment; and upon consideration of the Motion and all pleadings related thereto, including the Guillemette Affidavit; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.§§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion

---

[1]      Additional debtors include all of Amtrol Holdings, Inc.'s wholly-owned domestic subsidiaries: Amtrol Inc.; Water Soft Inc.; and Amtrol International Investments Inc.

[2]      All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

is in the best interests of the Debtors, their estates, and creditors; and after due deliberation thereon, and good and sufficient cause appearing therefore; it is hereby

ORDERED, that until such time as the Final Order is entered by the Court, all Utility Companies are prohibited from discontinuing, altering or refusing service to the Debtors on account of any unpaid pre-petition charges, or discriminating against the Debtors, or requiring payment of a deposit or receipt of any other security for continued service as a result of the Debtors' bankruptcy filing or any outstanding pre-petition invoices other than as set forth in the Motion; and it is further

ORDERED, that notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral; and it is further

ORDERED, that the Utility Motion and this Bridge Order shall be served on each Utility Company the Debtors believe could be affected by the Utility Motion and all other parties required to receive service under Del. Bankr. L.R. 2002-1(b) within five (5) days of entry of this Bridge Order; and it is further

→ ORDERED, that notwithstanding the language contained in the prior paragraph, the Debtors agree to establish a utility escrow account in the amount of $150,000, said amount representing approximately two weeks of average utility payables.

ORDERED, that the deadline by which objections to the Utility Motion and the Final

Order must be filed is _January 8, 2007_ , at _5:00_ p.m. (ET). A final hearing, if required,

on the Utility Motion will beheld on _January 11, 2007_ at _2:00_ p.m. (ET). If no

objections are filed to the Utility Motion, the Court may enter the Final Order without further

notice or hearing.

Dated: _DEC. 26_ 2006
   Wilmington, Delaware

The Honorable Kevin Gross
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------x
                                    :
In re:                              :   Chapter 11
                                    :
AMTROL HOLDINGS, INC., et al.,:         Case No. 06-11446 (KG)
                                    :
                                    :   (Jointly Administered)
                      Debtors.      :
                                    :   Re:  Docket Nos. 23 and 51
                                    :   Objection Deadline: 1/08/07
                                    :   Hearing Date: 1/11/07 at 2:00 p.m.
-----------------------------------x
```

OBJECTION OF NEW ENGLAND GAS COMPANY AND NARRAGANSETT ELECTRIC
COMPANY, BOTH d/b/a NATIONAL GRID, TO DEBTORS' MOTION FOR A
BRIDGE AND FINAL ORDER (I) PROHIBITING UTILITY COMPANIES FROM
DISCONTINUING, ALTERING OR REFUSING SERVICE, (II) ESTABLISHING
PROCEDURES FOR PROVIDING DEPOSITS TO REQUESTING UTIILTIES, (III)
DEEMING UTILITY COMPANIES TO HAVE ADEQUATE ASSURANCE OF PAYMENT,
AND (IV) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR
ADDITIONAL ASSURANCE PURSUANT TO U.S.C. §§ 105(a) & 366

New England Gas Company and Narragansett Electric Company,

both d/b/a National Grid (collectively, "National Grid" or

"Utilities"), by counsel, object to the *Debtors' Motion For a*

*Bridge Order and a Final Order (I) Prohibiting Utility Companies*

*From Discontinuing, Altering or Refusing Service, (II)*

*Establishing Procedures For Providing Deposits To Requesting*

*Utilities, (III) Deeming Utility Companies To Have Adequate*

*Assurance of Payment, and (IV) Establishing Procedures For*

*Resolving Requests For Additional Assurance Pursuant To 11 U.S.C.*

*§§ 105(a) & 366* (the "Utility Motion"), and set forth the

following:

SL1 692355v1/000000.00000

A-38

## Introduction

Despite the fact that Congress amended Section 366 of the Bankruptcy Code to reverse the prior practice of many bankruptcy courts making an initial determination of adequate assurance of payment on motions heard on an *ex parte* basis at the commencement of the bankruptcy proceeding, these and other debtors, have been filing motions at the outset of their bankruptcy proceedings seeking to specifically avoid the provisions and requirements set forth in the amended Section 366.  Specifically, amended Section 366 requires a Debtor to provide utilities with adequate assurance of payment in one of the forms set forth in Section 366(c) within 30 days of the Petition Date.  If the Debtor believes the utilities' requests are unreasonable or need to be modified, they can file a Motion with the Court seeking to modify the utilities' requests (a "Modification Motion").

The Debtors ask this Court to ignore the plain language and requirements of Section 366.  Specifically, instead of contacting their 17 utility companies and/or waiting to receive their deposit requests and follow the requirements and procedures set forth in Section 366, the Debtors request this Court to establish a two-week deposit as adequate assurance of payment and require utilities to file objections and come to Court if they object to the Debtors' unilateral determination of adequate assurance of payment.

2

Instead of completely ignoring the requirements of the statute for Debtors that failed to contact their 17 utility companies regarding their requests for adequate assurance of payment, the Court should require the Debtors to comply with the requirements of Section 366(c). If the Debtor believes the Utilities' requests should be modified, the Debtors should file a Modification Motion demonstrating why the Court should find that the Utility's request should be modified and have the Modification Motion scheduled for a hearing.

In this case, the Utilities have made requests for adequate assurance of payment based on the following factors: (1) the exposure established by the Utilities' state mandated billing cycles; (2) the Debtors' admittedly highly leveraged capital structure; (3) the excessive control the DIP Lender appears to have over the Debtors' operations; and (4) the Debtors willingness to provide a large super-priority carve-out for their professionals while seeking to deprive their utilities of the post-petition security they require. In contrast, the Debtors offer no objective basis for their two-week deposit proposal. Therefore, this Court should require the Debtors to provide the Utilities with the deposits they have requested herein and require the Debtors to file a Modification Motion if they believe the Utilities' requests for adequate assurance of payment should be modified.

3

SL1 692355v1/000000.00000

## Facts

1.    On December 18, 2006 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.    The Debtors' cases are being jointly administered.

### The Utility Motion

3.    On December 19, 2006, the Debtors filed the Utility Motion to address what they claim are 27 utility providers.  A closer look at Exhibit C to the Utility Motion shows that the Debtors have 27 accounts with the following 17 utility providers:

A.    3 Waste Removal Companies (It is not clear that waste removal companies are utilities under Section 366 of the Bankruptcy Code);

B.    4 Water and Sewer Companies (One water utility also appears to provide power to the Debtors as well);

C.    6 phone companies; and

D.    5 gas and electric companies.

4.    In the Utility Motion, the Debtors claim that their average monthly utility expenses are approximately $320,000.00.

5.    Through the Utility Motion, the Debtors seek to avoid the procedural and substantive requirements of Section 366.

4

SL1 692355v1/000000.00000

Instead of responding to adequate assurance demands of their 17
utility companies, the Debtors have elected to file the Utility
Motion and seek procedures that fail to provide utilities with
adequate assurance of payment as required by Section 366.

6.    Specifically, in the Utility Motion, the Debtors
propose to provide as adequate assurance of future payment a
deposit in an amount equal to the average cost to the Debtors of
two weeks of service over the twelve months preceding the
Petition Date to any requesting utility that does not already
hold a deposit equal to or greater than two weeks of utility
services or if the requesting utility is not currently paid in
advance for its services.  Utility Motion at ¶ 9.  The Debtors
further propose that the two week deposits shall only be paid to
those utilities that send written notice of a request for a two
week deposit to the Debtors, with a copy to Debtors' counsel,
counsel to the DIP Lenders, counsel to any official committee of
unsecured creditors, and the Office of the United States Trustee
within twenty (20) days of the entry of a Final Order approving
the procedures sought in the Utility Motion.  Utility Motion at ¶
10.  Any utility that fails to make a timely request for a two
week deposit is deemed to have waived its right to have received
adequate assurance of payment.  Utility Motion at ¶ 10.

7.    The Debtors also propose that any utility that is not
satisfied with the Debtors' mere two week deposit offer must,

5

within twenty (20) days of entry of a Final Order approving the
relief sought in the Utility Motion, file an appeal with the
Court ("Additional Assurance Appeal") that (i) sets forth the
location for which utility services are provided, (ii) includes a
summary of the Debtors' payment history relevant to the affected
account(s), including any security deposits or other pre-payments
or assurances previously provided by the Debtors, (iii) describes
in sufficient detail the reason(s) why the treatment afforded
pursuant to the procedures set forth in the Utility Motion does
not constitute satisfactory adequate assurance of payment, and
(iv) includes a proposal for what would constitute adequate
assurance from the Debtors, along with an explanation of why such
proposal is reasonable.  Utility Motion at ¶ 11.

    8.    The Debtors further propose that if a utility timely
files an Additional Assurance Appeal with the relief sought
therein which agreed to by the Debtors, the Debtors nevertheless
cannot provide any additional adequate assurance to a utility
either (i) in the amount requested by such utility in its
Additional Assurance Appeal, or (ii) in an amount agreed to by
the Debtors and the utility, without the consent of the DIP
Lender, in its sole discretion.  Utility Motion at ¶ 12.

    9.    Additionally, the Debtors propose that if a utility
that timely files an Additional Assurance Appeal and the Debtors
are unable to reach a compromise, a hearing to determine whether

6

additional assurance is necessary (a "Determination Hearing")
will be held on either (i) the Debtors' next omnibus hearing date
if the Adequate Assurance Appeal is filed on or before the date
that is fifteen (15) days prior to such omnibus hearing or (ii)
the following omnibus hearing date if the Additional Assurance
Appeal is filed thereafter.  Utility Motion at ¶ 13.

10.  On December 2, 2006, the Court entered the *Bridge Order*
*(I) Prohibiting Utility Companies From Discontinuing, Altering or*
*Refusing Service, (II) Establishing Procedures For Providing*
*Deposits To Requesting Utilities, (III) Deeming Utility Companies*
*To Have Adequate Assurance of Payment, and (IV) Establishing*
*Procedures For Resolving Requests For Additional Assurance*
*Pursuant To 11 U.S.C. §§ 105(a) & 366* (the "Bridge Utility
Order").

11.  The Bridge Utility Order in part provided that the
Debtors shall establish a utility escrow account in the amount of
$150,000 ($160,000 would be ½ of the Debtors' estimated monthly
expenses of $320,000), which allegedly represents approximately
two weeks of average utility payables.

12.  A final hearing on the Utility Motion is scheduled for
January 11, 2007 at 2:00 p.m., with objections to the Utility
Motion and Final Order to be filed by January 8, 2007 at 5:00
p.m.

7

Facts Regarding the Debtors Which Support
National Grid's Request For Adequate Assurance of Payment

13.    The Debtors design, manufacture and market pressure
control and storage products used in water systems applications,
certain Heating, Ventilation and Air Conditioning ("HVAC")
applications, and for the storage, transportation and dispensing
of certain gases. The Debtors' principal products include well
water tanks, hot water expansion tanks, water treatment products,
indirect-fired water heaters and returnable and non-returnable
pressure-treated cylinders used primarily to store, transport and
dispense liquid propane gas ("LPG") and refrigerant gases.
*Affidavit of Larry T. Guillemette In Support of First Day Motions*
at ¶ 6 (hereinafter "Guillemette Aff. at ¶ __").

14.    These bankruptcy cases do not affect the Debtors'
foreign subsidiaries. Guillemette Aff. at ¶ 12.

15.    The Debtors are a party to (i) a $52.5 million senior
first-priority secured credit facility arranged by Foothill
Capital Corporation (now know as Wells Fargo Foothill, Inc.) (as
amended, the "Foothill Facility"), and (ii) a $35 million senior
second-priority secured credit facility (as amended, the "Term C
Loan Facility"). The Debtors also issued $115 million of 10 5/8%
Senior Subordinated Notes due December 2006 (the "1996 Notes")
pursuant to a certain Note Indenture Agreement dated as of
November 1, 2006 (the "1996 Indenture"). As of the Petition

8

Date, approximately $97.8 million of the 1996 Notes remain outstanding. Guillemette Aff. at ¶ 37.

16.  All of the Debtors' North American secured and unsecured long-term debt (approximately $188 million in principal as of the Petition Date) matured in December 2006.  As the maturity of this debt approached, the Debtors explored various avenues to recapitalize and/or restructure their debt, including the possible sale of all or portions of their business. Guillemette Aff. at ¶ 45.

17.  The Debtors have purportedly reached an agreement in principle with the current holders of the 1996 Notes on a conversion of their position in the 1996 Notes into new equity in the Debtors through a plan of reorganization.  Guillemette Aff. at ¶ 47.

18.  The Debtors contend that they are concerned that a lengthy bankruptcy case will erode the Debtors' revenues and profitability, and are concerned about a potential loss of customers as a result of certain actions by their competitors. The Debtors have been informed that certain competitors are soliciting business from the Debtors' customers by suggesting that the Debtors' business may be liquidated, and therefore unable to:  (i) continue supplying products; (ii) continue to provide customer service; and (iii) stand behind their product warranties.  The Debtors contend that the negative solicitation

9

campaigns have had a negative impact on the Debtors' customer base that may intensify if the Debtors are not recapitalized quickly. The Debtors are also concerned that the general uncertainty surrounding the Debtors in a lengthy bankruptcy will cause customers to shift purchases from the Debtors to their competitors, further eroding the Debtors' revenues and profitability. Guillemette Aff. at ¶ 63.

19. News releases report that Larry T. Guillemette, Amtrol's chairman, president and chief executive officer, commented, "[f]or several years, Amtrol has been constrained by its highly leveraged capital structure. Quite simply, we have too much debt. . ."

### Post-Petition Financing

20. On December 19, 2006, the Debtors filed their *Emergency Motion For Interim and Final Orders (I) Authorizing Debtors To (A) Obtain Post-Petition Senior Secured Super-Priority Financing and (B) Use Cash Collateral of Pre-Petition Secured Lenders; (II) Authorizing the Immediate Payoff of the Pre-Petition Secured Loans, (III) Granting Adequate Protection To Pre-Petition Secured Lenders; and (IV) Scheduling Final Hearing* (the "Financing Motion"). Through the Financing Motion, the Debtors seek authority to obtain post-petition senior secured and super-priority financing (the "DIP Financing") up to the aggregate principal amount of $115 million (with $107,500,000 authorized

10

under the Interim DIP Order). Financing Motion at ¶ 12(a). If approved, the DIP Financing would refinance and replace the Foothill Facility and the Term C Loan Facility. Financing Motion at ¶ 11. The DIP Facilities would consist of (a) up to $90 million senior secured term loan, and (b) a $25 million senior secured revolving credit facility. Financing Motion at ¶ 18.

21. The Debtors' obligations under the DIP Facilities would be subject to a carve-out for professional fees and court costs in an aggregate amount of $2.5 million. Financing Motion at ¶ 18.

22. On December 20, 2006, the Court entered the Interim Financing Order.

<u>Facts Concerning National Grid</u>

23. National Grid provided the Debtors with prepetition utility service and has continued to provide the Debtors with post-petition utility service.

24. The normal billing in a monthly cycle and follow-up procedures and practices for National Grid are as follows: Meters are read monthly at intervals of approximately 27 to 33 days. The meter reading date for each meter normally depends on its geographic location. The log date for all meters read on any particular day is corrected and processed, and every customer whose meter was read on that day normally receives its bill by first-class mail several days following the meter reading date.

11

Bills are due when rendered, but National Grid's tariffs require that each customer be afforded at least 20 days after rendition of the bill to make payment without being considered in default. Non-payment by a customer of the preceding month's bill is normally not discovered and acted upon until the billing for the current month is in the process of preparation.

25.   After discovery of non-payment, the rules of the Rhode Island Public Utility Commission require that the normal customer receive at least fifteen days notice before National Grid denies further service by cutting a customer off.  The number of unpaid service days in a situation where a meter is read and billed monthly to the time of disconnection is approximately **75 to 90** days.  Therefore, under ideal circumstances, National Grid would be forced to incur significant post-petition debt before being able to disconnect service.

26.   Subject to a reservation of the National Grid's rights to supplement its post-petition deposit request if additional accounts belonging to the Debtors are subsequently identified, National Grid's post-petition deposit requests are currently as follows:

| No. of Accounts | Deposit Request |
| --- | --- |
| 9 | $302,018 (two-month) |

## Discussion

A.  THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF PAYMENT
    PROCEDURES VIOLATE THE EXPRESS PROVISIONS OF SECTION
    366 AND SHOULD BE REJECTED BY THE COURT.

Sections 366(b) and (c) of the Bankruptcy Code, in

pertinent part, provide:

> (b) Such utility may alter, refuse, or discontinue
> service if neither the trustee nor the debtor, within
> 20 days after the date of the order for relief,
> furnishes adequate assurance of payment, in the form of
> a deposit or other security, for service after such
> date. . . .
>
> (c)(1)(A) For purposes of this subsection, the term
> 'assurance of payment' means
>
>> (i) a cash deposit;
>>
>> (ii) a letter of credit;
>>
>> (iii) a certificate of deposit;
>>
>> (iv) a surety bond;
>>
>> (v) a prepayment of utility consumption; or
>>
>> (vi) another form of security that is
>> mutually agreed upon between the utility and
>> the debtor or the trustee.
>
> (B) For purposes of this subsection an
> administrative expense priority shall not
> constitute an assurance of payment,
>
> (2) Subject to paragraphs (3) and (4), with respect
> to a case filed under chapter 11, a utility
> referred to in subsection (a) may alter, refuse, or
> discontinue utility service, if during the 30-day
> period beginning on the date of the filing of the
> petition, the utility does not receive from the
> debtor or the trustee adequate assurance of payment
> for utility service that is satisfactory to the
> utility;
>
> (3)(A) On request of a party in interest and after
>     notice and a hearing, the court may order
>     modification of the amount of an assurance of

13

payment under paragraph (2).

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider
(i) the absence of security before the date of the filing of the petition;
(ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
(iii) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

1.    The Debtors' Attempt To Extend The 20 and 30-Day Provisions Of Section 366 Should Be Rejected.

As set forth above, Section 366(b) of the Bankruptcy Code establishes a procedure whereby a debtor is to provide a utility with adequate assurance of payment, in the form of a deposit or other security within the first 20 days of the bankruptcy proceeding. If the debtor fails to provide the utility with adequate assurance of payment that the utility believes is satisfactory within the first 30 days of the bankruptcy proceeding, Section 366(c)(2) expressly provides that the utility is entitled to alter, refuse or discontinue service to the debtor. Despite the foregoing, the Debtors have sought in the Utility Motion procedures that would extend the 20 and 30-day

14

periods of Sections 366(b) and (c).

Under the procedures sought by the Debtors in the Utility Motion, a utility that does not believe the Debtors' two-week deposit offer is sufficient, must file an Additional Assurance Appeal with the Court no later than 20 days after entry of a Final Order approving the Utility Motion that is in compliance with the procedures set forth in paragraph 11 of the Utility Motion.

Additionally, even if the Debtors and a utility come to an agreement concerning additional adequate assurance of future payment, the Debtors nevertheless may not provide such additional adequate assurance to a utility either (i) in the amount requested by such utility in its Adequate Assurance Appeal or (ii) in an amount agreed to by the Debtors and such Utility Company, without the consent of the DIP Lender, in its sole discretion. fn1  Utility Motion at ¶ 12.

Additionally, if the Debtors and a utility that timely files an Adequate Assurance Appeal cannot agree to adequate assurance of future payment, the Debtors propose that a Determination Hearing would be held on either (i) the Debtors' next omnibus hearing date if the Adequate Assurance Appeal is filed on or before the date that is fifteen (15) days prior to such omnibus

---

1   Section 366(c)(2) provides that the utility, not the DIP Lender, is the entity that is to decide whether the proposed adequate assurance of payment is satisfactory.

15

hearing, or (ii) the following omnibus hearing date if the
Additional Assurance Appeal is filed thereafter.  Utility Motion
at ¶ 13.  Hence, the Debtors are seeking to obtain an extension
of the 20 and 30-day periods of Section 366 if a utility makes a
request for adequate assurance in accordance the burdensome
requirements of the Debtors' proposed procedures.  There is no
need for all of these procedures.  The Debtors either need to
provide National Grid with acceptable adequate assurance of
payment within 30 days of the Petition Date or, as set forth in
subsection 3 below, file a proper Motion seeking to modify the
adequate assurance of payment requested by National Grid.

> 2.   **The Court Should Reject The Procedures That
> Attempt To Add Time Consuming And Burdensome
> Requirements That Are Not Found In Section
> 366.**

In addition to seeking to avoid the time limitations
established by Section 366, the Debtors also seek procedures
designed to make the adequate assurance of payment process more
time consuming and burdensome.  For example, even though Section
366 now defines assurance of payment, it contains no provisions
requiring utilities to make demands for adequate assurance within
certain time periods nor does it establish requirements for the
content of any such request.  Despite the foregoing, the proposed
procedures set forth in the Utility Motion require that utilities
who are not satisfied with the Debtors' mere two week deposit

16

offer must file an Additional Assurance Appeal with the Court
within twenty (20) days of entry of a Final Order that (i) sets
forth the location for which utility services are provided, (ii)
includes a summary of the Debtors' payment history relevant to
the affected account(s), including any security deposits or other
pre-payments or assurances previously provided by the Debtors,
(iii) describes in sufficient detail the reason(s) why the
treatment afforded pursuant to the procedures set forth in the
Utility Motion does not constitute satisfactory adequate
assurance of payment, and (iv) includes a proposal for what would
constitute adequate assurance from the Debtors, along with an
explanation of why such proposal is reasonable.  Utility Motion
at ¶ 11.

     Information regarding prepetition payment history, which the
utilities would be required to provide to the Debtors as part of
an Adequate Assurance Request under the proposed procedures in
the Utility Motion are statutorily irrelevant pursuant to
Sections 366(c)(3)(B).  Section 366(c)(3)(B) expressly provides:

> (B) In making a determination under this
> paragraph whether an assurance of payment is
> adequate, the court may not consider
>> (i) the absence of security before the date
>> of the filing of the petition;
>> (ii) the payment by the debtor of charges for
>> utility service in a timely manner before the
>> date of the filing of the petition; or
>> (iii) the availability of an administrative
>> expense priority.

17

Moreover, the Debtors presumably have access to the same account information as the utilities. The Debtors are merely seeking to impose these requirements and procedures upon the utilities to dissuade the utilities from making requests for adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code. Simply put, such burdensome procedures are not contained in Section 366 and should not be granted by this Court.

> 3. **The Court Should Reject The Debtors' Proposed Adequate Assurance Procedures That Contravene The Express Provisions of Section 366 Which Requires a Debtor To Provide A Utility With Adequate Assurance As Demanded By the Utility, And If The Debtor Believes That The Deposit Should Be Modified, The Debtor Must File A Motion To Modify The Adequate Assurance Deposit Paid To The Utility.**

Section 366(b) expressly provides that a debtor must provide a utility with adequate assurance of payment that the utility believes is satisfactory within the first 30 days of the bankruptcy proceeding. Section 366(c)(3)(a) (3)(A) further provides:

> On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

Accordingly, the proper procedure under Section 366 is for a debtor to provide a utility with adequate assurance of payment requested by the utility within 30 days of the bankruptcy proceeding, and if the debtor wants a modification of the amount

18

of adequate assurance of payment that it has provided to the utility, then the debtor must file a motion to modify the deposit it has paid to the utility. Simply put, a debtor must first pay the requested deposit amount, and then file a motion to modify the paid deposit. *See In re Lucre, Inc.*, 333 B.R. 151 (Bankr. W.D. Mich. 2005) (holding that a debtor has no recourse to modify the adequate assurance payment that a utility is demanding until the debtor actually accepts and pays the adequate assurance that the utility proposes); *In re Stagecoach Enterprises, Inc.*, 1 B.R. 732 (Bankr. M.D. Fla. 1979) (holding that under Section 366, the utility itself has the initial right to set the amount of the deposit or other adequate assurance that it requires for the payment of utility service, and that the debtor can apply to the court for a modification of whatever amount the utility deems necessary to provide adequate assurance of payment). Additionally, the debtor has the burden of proof as to whether its requested adequate assurance modification is justified. *Id.* at 734 (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof).

> B.  THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED HEREIN PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.

Section 366(c) was amended to overturn decisions such as Virginia Electric and Power Company v. Caldor, Inc., 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without

19

more, could constitute adequate assurance of payment in certain
cases.    Section 366(c)(1)(A) specifically defines the forms that
assurance of payment may take as:

> (i) a cash deposit;
>
> (ii) a letter of credit;
>
> (iii) a certificate of deposit;
>
> (iv) a surety bond;
>
> (v) a prepayment of utility consumption; or
>
> (vi) another form of security that is mutually
> agreed upon between the utility and the debtor or
> the trustee.

A determination of adequate assurance is within the court's
discretion, and is made on a case-by-case basis, subject to the
new requirements of Section 366(c).  See In re Utica Floor
Maintenance, Inc., 25 B.R. 1010, 1016 (Bankr. N.D.N.Y. 1982); In
re Cunha, 1 B.R. 330, 332-33 (Bankr. E.D. Va. 1979).  Section 366
of the Bankruptcy Code was enacted to balance a debtor's need for
utility services from a provider that holds a monopoly on such
services, with the need of the utility to ensure for itself and
its rate payers that it receives payment for providing these
essential services. See In re Hanratty, 907 F.2d 1418, 1424 (3d
Cir. 1990).  The deposit or other security "should bear a
reasonable relationship to expected or anticipated utility
consumption by a debtor." In re Coastal Dry Dock & Repair Corp.,
62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986).  In making such a
determination, it is appropriate for the Court to consider "the

SL1 692355v1/000000.00000

length of time necessary for the utility to effect termination
once one billing cycle is missed." In re Begley, 760 F.2d 46, 49
(3d Cir. 1985). Based on the Debtors' anticipated utility
consumption, the minimum period of time the Debtors could receive
service from National Grid before termination of service for non-
payment of bills is approximately two (2) months. Accordingly,
the two-month security deposit requested by National Grid is
reasonable. See In re Stagecoach, 1 B.R. 732, 735-36 (Bankr. M.D.
Fla. 1979) (two month deposit is appropriate where the debtor
could receive 60 days of service before termination of services
because of the utilities' billing cycle.); see also In the Matter
of Robmac, Inc., 8 B.R. 1, 3-4 (Bankr. N.D. Ga. 1979).

As set forth above, National Grid's deposit request is based
on: (1) its billing exposure created by its state law tariffs
and/or regulations; and (2) amounts that its state regulatory
commission, which is a neutral third-party entity, permits it to
request. Although National Grid recognizes that this Court is
not bound by the regulations/tariffs of the applicable state
governmental entity that establishes the deposit amounts that
National Grid can request from its customers, it is extremely
relevant information of a determination made by an independent
entity on the appropriate amount of security that should be paid
to National Grid.

Additionally, National Grid's deposit request is based upon:

21

(1) the Debtors' admitted highly leveraged capital structure; (2) the excessive control that the DIP Lender has over the Debtors' operations (It is simply unprecedented to see a DIP Lender given veto power over the adequate assurance of payment procedures in the Section 366 pleadings.); and (3) The Debtors willingness to provide payments and security to other creditors other than its utilities. Specifically, the Debtors have sought authority to pay the following amounts: (A) $4.8 million for the prepetition claims of purported "critical vendors" that remarkably do not include utility providers; (B) Up to $1 million for the prepetition claims of shippers, warehousemen and other purported lien claimants; (C) Up to $875,000 for foreign vendors. Moreover, in addition to their $189,000 retainer, the Debtors have sought to obtain a super-priority carve-out for their and other professionals' post-petition fees in the amount of up to $2.5 million, which is nearly 8 times the amount of the Debtors' total average monthly utility expenses to all of its utilities.

In contrast, the Debtors do not provide an objective basis for their adequate assurance offers. The Debtors merely claim that the proposed procedures set forth in the Utility Motion would provide an orderly process for providing adequate assurance of payment to utility companies without risking irreparable harm to the estates. Utility Motion at ¶ 22. Additionally, in support of the relief sought in the Utility Motion, the Debtors

SL1 692355v1/000000.00000

claim that prior to the Petition Date, they were current in the payment of invoices received from utility companies. Utility Motion at ¶ 9. Information regarding prepetition payment history is statutorily irrelevant pursuant to Sections 366(c)(3)(B).

WHEREFORE, National Grid respectfully requests that this Court enter an order:

(I)    Vacating the Bridge Utility Order;

(II)   Awarding National Grid the post-petition adequate assurances of payment it has requested from the Debtors herein; and

(III)  Awarding such other and further relief as the Court deems just and appropriate.

Dated:  January 8, 2007          STEVENS & LEE, P.C.


                                 /s/ John D. Demmy
                                 John D. Demmy (I.D. No. 2802)
                                 1105 North Market Street, 7th Floor
                                 Wilmington, Delaware 19801
                                 Phone: (302) 425-3308
                                 Fax: (610) 371-8515
                                 E-mail: jdd@stevenslee.com

                                 -and-

                                 Russell R. Johnson III
                                 2258 Wheatlands Drive
                                 Manakin-Sabot, Virginia 23103
                                 Phone: (804) 749-8861

                                 *Counsel for National Grid*

23

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| AMTROL HOLDINGS, INC., *et al.*[1] | : Case No. 06-11446 (KG) |
| | : (Jointly Administered) |
| Debtors. | : |
| | : Related Docket Nos.: 23 & 51 |
| | : |

## FINAL ORDER (I) PROHIBITING UTILITY COMPANIES FROM DISCONTINUING, ALTERING OR REFUSING SERVICE, (II) ESTABLISHING PROCEDURES FOR PROVIDING DEPOSITS TO REQUESTING UTILITIES, (III) DEEMING UTILITY COMPANIES TO HAVE ADEQUATE ASSURANCE OF PAYMENT, AND (IV) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE PURSUANT TO 11 U.S.C. §§ 105(A) & 366

Upon the motion (the **"Motion"**)[2] of the above-captioned debtors and debtors-in-possession for entry of an order pursuant to sections 105(a) and 366 of the Bankruptcy Code: (i) prohibiting the Utility Companies from discontinuing, altering or refusing service to the Debtors, (ii) establishing procedures whereby the Debtors will provide Deposits to Requesting Utilities, (iii) deeming the Utility Companies to have received adequate assurance of payment, and (iv) establishing procedures for determining requests for additional assurances of payment; and due and proper notice of the Motion having been given; and it appearing that no other or further notice is required; and upon consideration of the Motion and all pleadings related thereto, including the Guillemette Affidavit; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.§§ 157 and 1334; and it appearing that this is a core

---

[1]    Additional debtors include all of Amtrol Holdings, Inc.'s wholly-owned domestic subsidiaries: Amtrol Inc.; Water Soft Inc.; and Amtrol International Investments Inc.

[2]    All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation thereon, and good and sufficient cause appearing therefore; it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that absent a post-petition default in payment for post-petition services or any further order of the Court each Utility Company is hereby prohibited from (i) discontinuing, altering, or refusing service to the Debtors on account of any unpaid pre-petition charges or otherwise, or (ii) requiring the payment of a security deposit or receipt of any other security from the Debtors in connection with any unpaid pre-petition charges except as set forth herein and in the Motion; and it is further

ORDERED, that the procedures for determining requests for additional assurance of payment as described in the Motion are approved as follows:

a)    Other than as set forth herein, each Utility Company is prohibited from discontinuing, altering, refusing service to, or discriminating against the Debtors until, after a Determination Hearing, this Court issues a final order authorizing such action;

b)    Other than pursuant to the procedures set forth herein and in the Motion, the Utility Companies are prohibited from requiring additional adequate assurance of payment from the Debtors whether in connection with any unpaid pre-petition charges or otherwise;

c)    Within five (5) days after the entry of this Final Order granting the relief requested herein, the Debtors shall serve this Final Order on the Utility Companies;

d)    Utility Companies shall have twenty (20) days from the date of entry of this Final Order approving the procedures described herein to send an Additional Payment Request in the manner set forth in the Motion;

e)    The Debtors shall have ten (10) days to comply with each such Additional Payment Request by providing Requesting Utilities with a Deposit in an amount equal to the average cost to the Debtors of two weeks of service from such Requesting Utility over the twelve (12) months preceding the Petition Date provided that such Requesting Utility does not already hold a deposit equal to or greater than two (2) weeks of utility services, and provided further that such utility is not currently paid in advance for its services.[3]

f)    Utility Companies that do not file an Additional Payment Request by the Additional Payment Request Deadline shall be deemed to have received satisfactory adequate assurance of payment in accordance with section 366(c)(1)(A)(vi);[4]

g)    If a Utility Company does not believe that it has received satisfactory adequate assurance of payment, regardless of whether it has received a Deposit, pursuant to the procedures set forth herein and in the Motion, it may file an Additional Assurance Appeal pursuant to the procedures set forth herein and in the Motion. Specifically, the Additional Assurance Appeal may be filed with this Court at any time after a Utility Company becomes an Advance Payment Utility Company or Consenting Utility Company and must (i) be in writing, (ii) set forth the location for which utility services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or other pre-payments or assurances previously provided by the Debtors, (iv) describe in sufficient detail the reason(s) why the treatment afforded pursuant to the procedures set forth herein does not constitute satisfactory adequate assurance of payment, and (v) include a proposal for what would constitute adequate assurance from the Debtors, along with an explanation of why such proposal is reasonable;

h)    The Debtors shall be entitled to comply with or compromise, Additional Assurance Appeals in their sole discretion and without further notice or order of the Court; provided, however, that the Debtors may not provide additional adequate assurance to a Utility Company either (i) in the amount requested by such Utility Company in its Additional Assurance Appeal or (ii) in an amount agreed to by the Debtors and such Utility Company, without the consent of the DIP Lender, in its sole discretion;

i)    Where a Utility Company filed an Additional Assurance Appeal and the Debtors are unable to reach a compromise, a hearing to determine whether additional assurance is necessary (a **"Determination Hearing"**) will be held on either (i) the

---

[3]    In the event that a Utility Company sends the Debtors an Additional Payment Request prior to the entry of this Final Order approving the procedures described herein, the Debtors shall have until the entry of this Final Order to comply with such Additional Payment Request.

[4]    For those Utility Companies that are subsequently added to Exhibit C, the Debtors shall serve a copy of the Order on such Utility Companies, along with an amended Exhibit C, and such subsequently added entities shall have twenty (20) days from service of the Order to make an Additional Payment Request.

Debtor's next omnibus hearing date if the Additional Assurance Appeal is filed on or before the date that is fifteen (15) days prior to such omnibus hearing or (ii) the following omnibus hearing date if the Additional Assurance Appeal is filed thereafter;

j)    Any Deposit or assurance of payment provided by the Debtors to a Requesting Utility will, to the extent not used by the Utility Company to satisfy a post-petition default, be returned to the Debtors within thirty (30) days after the earlier of: (i) the consummation of a sale of substantially all of the Debtors assets pursuant to section 363 of the Bankruptcy Code; or (ii) the effective date of a plan of reorganization or liquidation in these Chapter 11 cases without further order of the Court, or otherwise as ordered by the Court.

ORDERED, that the Debtors are authorized, in their sole discretion, to amend Exhibit C to the Motion to add or delete any Utility Company, and this Order shall apply to any such Utility Company that is subsequently added to Exhibit C to the Motion; and it is further

ORDERED, that pursuant to section 366(c)(1)(A) of the Bankruptcy Code, to secure payment of Additional Payment Requests, the Debtors will maintain a utility escrow account (the **"Utility Escrow"**) for the exclusive benefit of the Utility Companies in the amount of $150,000.00, said amount representing approximately two weeks of average utility payables; and it is further

ORDERED, that, except as otherwise agreed to by Debtors pursuant to the procedures set forth in this Order, payment to a Utility Company from the Utility Escrow pursuant to section 366(c)(1)(A) shall not exceed the charges for two weeks of average utility payables from such requesting Utility Company, said payment reducing the Utility Escrow proportionally; and it is further

ORDERED, that notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral; and it is further

ORDERED, that the Debtors are hereby authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: January 11, 2007
      Wilmington, Delaware

 

 

The Honorable Kevin Cross
United States Bankruptcy Judge

```
 1
 2                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 3
                                     .
 4    IN RE:                         .        Chapter 11
                                     .
 5    Amtrol Holdings, Inc., et al., .
                                     .
 6                                   .
           Debtor(s).               .        Bankruptcy #06-11446 (KG)
 7    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 8                            Wilmington, DE
                             January 11, 2007
 9                              2:00 p.m.
10                         TRANSCRIPT OF HEARING
                      BEFORE THE HONORABLE KEVIN GROSS
11                    UNITED STATES BANKRUPTCY JUDGE
12
      APPEARANCES:
13
      For The Debtor:              William Chipman, Esq.
14                                 Edwards Angell Palmer &
                                   Dodge, LLP
15                                 15th Floor
                                   919 North Market Street
16                                 Wilmington, DE 19801
17                                 Mark D. Olivere, Esq.
                                   Edwards Angell Palmer &
18                                 Dodge, LLP
                                   15th Floor
19                                 919 North Market Street
                                   Wilmington, DE 19801
20
                                   Stuart Brown, Esq.
21                                 Edwards Angell Palmer &
                                   Dodge, LLP
22                                 15th Floor
                                   919 North Market Street
23                                 Wilmington, DE 19801
24
25
```

2

```
 1   For the Ad Hoc Committee:      Kelley A. Cornish, Esq.
     Of Senior Bondholders          Paul, Weiss, Rafkind, Wharton
 2                                   & Garrison, LLP
                                     1285 Avenue of the Americas
 3                                   New York, NY 10019

 4                                   Joel A. Waite, Esq.
                                     Young Conaway Stargatt &
 5                                   Taylor, LLP
                                     1000 West Street, 17th Floor
 6                                   Wilmington, DE 19899

 7   For Prepetition Second:        Derek C. Abbott, Esq.
     Lenders                         Morris, Nichols, Arsht &
 8                                   Tunnel, LLP
                                     Chase Manhattan Center
 9                                   1201 North Market Street
                                     Wilmington, DE 19899
10
     For Barclays Capital:          Christopher Winter, Esq.
11                                   Duane Morris, LLP
                                     1100 North Market Street
12                                   Wilmington, DE 19801

13                                   Mitchell A. Seider, Esq.
                                     Latham & Watkins, LLP
14                                   885 Third Avenue - Suite 1000
                                     New York, NY 10022
15
     For National Grid:             Russell Johnson, III, Esq.
16                                   Law Offices of Russell Johnson
                                     2258 Wheatlands Drive
17                                   Manakin-Sabot, VA 23103

18   For The United States:         Mark Kenney, Esq.
     Trustee                         Office of the United States
19                                   Trustee
                                     844 King St. - Ste. 2207
20                                   Lockbox 35
                                     Wilmington, DE 19801
21
     Audio Operator:                Jason Smith
22

23

24

25
```

3

```
 1 |  Transcribing Firm:              Writer's Cramp, Inc.
   |                                  6 Norton Rd.
 2 |                                  Monmouth Jct., NJ 08852
   |                                  732-329-0191
 3 |
   |  Proceedings recorded by electronic sound recording, transcript
 4 |  produced by transcription service.
 5 |
 6 |
 7 |
 8 |
 9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
```

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

*732-329-0191*

A-68

31

```
 1              THE COURT:  Yes.
 2              MR. CHIPMAN:  They could just shut us off after 31
 3     days.  We're here today within 30 days to resolve this matter.
 4     And Your Honor, it's been resolved, we argue, consensually with
 5     all the utilities except for National Grid.  And Your Honor, we
 6     believe that the two weeks plus the fact that Your Honor's
 7     entered the final D-I-P Order providing for $115 million of D-
 8     I-P financing, the Debtors now have about $2 million in the
 9     bank today -- cash -- and availability under the D-I-P of 12 to
10     13 million -- provide ample adequate assurance of payment going
11     forward.
12              THE COURT:  I am satisfied with the process that's
13     been followed.  I think it's an issue of form over substance.
14     And we're here now whether it's -- I do think it is still the
15     Debtors' burden to establish the adequate assurance that is
16     being provided.  I don't think that's shifted.  But as far as
17     the notice and the requirement to come to a hearing prepared to
18     put on testimony, I think that we should proceed with the
19     testimony now.
20              MR. CHIPMAN:  Thank you, Your Honor.  If I may
21     proceed?
22              THE COURT:  Yes.
23              MR. CHIPMAN:  Your Honor, Mr. DePaula is in Court
24     and I'll offer a short proffer of his testimony and offer him
25     up for cross examination.
```

32

1        THE CLERK:  How do you spell his last name?

2        MR. CHIPMAN:  I'm sorry.  It's DePaula.  D-E,

3   capital P-A-U-L-A.  Mr. DePaula's the CFO of the company, Your

4   Honor, and if called to testify would testify as to the

5   following facts.

6        In the operation of their manufacturing distribution and

7   office facilities, the Debtors incur utility expenses in the

8   ordinary course of business for, among other things, water,

9   sewer, water, sewer services, electricity, gas, local telephone

10  service and waste disposal.  On an annual basis, the Debtors

11  spend approximately 3.8 million for various utility services,

12  with an aggregate monthly cost of about $320,000.

13  Approximately 27 utility companies in the United States provide

14  these utility services to the Debtors.

15       Prior to the petition date, the Debtors were current in

16  the payment of the invoices they received from utility

17  companies.  The Debtors currently have approximately $2 million

18  in cash on hand and have availability under the D-I-P loan now

19  that the final D-I-P Order's been approved of approximately $12

20  to $13 million of working capital.  The D-I-P financing will

21  provide enough funding to pay all utility bills and in fact all

22  administrative expenses in these cases incurred by the Debtors

23  during these Chapter 11 cases in full and on time.

24       Mr. DePaula would further testify that if utility

25  companies are permitted to terminate utility services on the

33

1    31st day after the petition date, a substantial disruption to

2    the Debtors' operations will occur.  And the Debtors'

3    businesses will be irreparably harmed.  To avert a potential

4    disaster, the Debtors would then be forced to pay whatever

5    amounts are demanded by the utility companies to avoid the

6    cessation of essential utility services and ultimately the

7    demise of their businesses.

8        The Debtors submit that the procedures set forth in the

9    motion provide for an orderly process for providing adequate

10   assurance of payment to the utility companies without risking

11   irreparable harm to the Estates.  Without the procedures set

12   forth in the motion, the Debtors could be forced to address

13   numerous requests by the utility companies in a haphazard

14   manner at a critical period while the Debtors are trying to

15   reorganize their businesses.

16       The Debtors could be forced to capitulate -- sorry -- to

17   almost any demands made by their many utility companies, or

18   face the discontinuation of utility service to their

19   manufacturing facilities and a potential shutdown of their

20   businesses.

21       The orderly process contemplated by the procedures set

22   forth in the motion will avert such a potentially disastrous

23   outcome, enabling the Debtors to make a smooth transition into

24   Chapter 11 while ensuring a fair process for providing adequate

25   assurance to the utility companies to the extent required.

34

1    Your Honor, with that, that would conclude Mr. DePaula's

2    testimony in regard to this motion on adequate assurance.

3         THE COURT:  And he's available for cross

4    examination.

5         MR. CHIPMAN:  He is available for cross examination,

6    Your Honor.

7         THE COURT:  Yes, Mr. Johnson?

8         MR. JOHNSON:  Your Honor, I have some objections to

9    the proffer, so I'm trying to figure out the best way to

10   proceed with that.  I'll identify just a couple that I wrote

11   down as it was being presented and we can determine how to go

12   from there.

13        THE COURT:  Okay.

14        MR. JOHNSON:  Under the new statute, under 366,

15   whether or not they were current on payments is no longer

16   relevant.  It's in the statute.  It says it's not relevant so

17   I'd object to that as not being relevant testimony.

18        THE COURT:  Right.

19        MR. JOHNSON:  I'm not even sure it's true, actually.

20   But it's not relevant, so I'd object to that.  Your Honor, I

21   also object to the testimony about availability and cash on

22   hand and things and testimony related to ability to pay their

23   bills.

24        Once again, the statute -- Section 366(c)3(a)iii, which is

25   what we're under here on this -- I guess transformer -- or

1  transformation of the utility motion to a modification motion

2  under this section, it says the availability of an

3  administrative expense priority and saying you can pay your

4  post-petition bills, which is what I thought I heard him say

5  several times, sounds like the availability of administrative

6  expense priority.  So to that extent, I would object.

7      And then lastly, I -- there was a lot of fluff, I guess,

8  in the proffer.  It was more than just a factual proffer -- lot

9  of characterizations and I would object to that.  There was

10 quite a few.  I mean, I don't necessarily want to have to have

11 their CFO go through and spend all afternoon testifying here

12 today.

13     And I'd like to offer a proffer up of my witness as well,

14 but I do have some objections to some of the fluff that was in

15 there about the -- for example, the threat of turnoff in the

16 31st day.  We're here today -- we're not talking about threat

17 of a turnoff.  We're not talking about an unreasonable demand.

18 National Grid's demand is a two-month deposit after tariffs and

19 there's no other utility here.  So I think some of that stuff's

20 not relevant and probably could have been excised from the

21 proffer.

22         THE COURT:  Mr. Chipman?

23         MR. CHIPMAN:  Your Honor, may I respond?

24         THE COURT:  Yes.

25         MR. CHIPMAN:  Briefly?  Your Honor, we're okay with

1   the first point.  I don't think it's relevant to a

2   determination -- what -- I agree that what happened pre-

3   petition is irrelevant.

4        Your Honor, with respect to the second point, we're not

5   giving them an administrative claim here.  What we're trying to

6   establish for the Court is we have plenty of money to pay these

7   during the course of the case, which isn't precluded in the

8   statute.  We're trying to pay them, not give them

9   administrative claim.

10             THE COURT:  Right.

11             MR. CHIPMAN:  The third point, we'll agree, that all

12  the fluff can come out.

13             THE COURT:  Okay.

14             MR. CHIPMAN:  And --

15             THE COURT:  I would say it's a hybrid proffer of

16  facts and oral -- and legal argument.  And I agree and I think,

17  does that help Mr. Johnson?

18             MR. JOHNSON:  That's fine.

19             THE COURT:  Okay.  And I guess, Mr. Johnson, the

20  witness is still available to you for cross examination.

21             MR. JOHNSON:  No, Your Honor, that's fine.

22             THE COURT:  Okay.

23             MR. JOHNSON:  I'd like to put my witness on unless

24  you have another witness.

25             MR. CHIPMAN:  No, Your Honor, that's --

37

```
1              THE COURT:  Anyone else?

2              MR. CHIPMAN:  -- fine.  I'll -- sorry.

3       Your Honor, the only other evidence I have to offer is

4    basically orders that have been entered -- and I have copies

5    for Counsel -- in this district approving similar procedures.

6    And I didn't know when Your Honor -- I think I should offer

7    those up before I turn the podium over to Counsel for the

8    utilities.

9              THE COURT:  I --

10             MR. JOHNSON:  I object on relevancy.  Obviously

11   these are case by case plan specific.

12             THE COURT:  I would say let's reserve those for --

13             MR. CHIPMAN:  Argument?

14             THE COURT:  -- whatever followup argument you're

15   going to have.

16             MR. CHIPMAN:  Your Honor, I'll reserve those for

17   argument, then.

18             THE COURT:  Okay.

19             MR. CHIPMAN:  Thank you.

20             THE COURT:  Thank you.  Your -- well, not your

21   witness -- I'm sorry, your turn, Mr. Johnson.

22             MR. JOHNSON:  Your Honor, my proffer is William

23   Grossman from National Grid.  Mr. Grossman is an employee of

24   National Grid and is here and would testify if called today,

25   Your Honor, that National Grid provided service pre-petition --
```

1  continues to provide gas and electric -- New England Gas

2  company is the -- providing the gas service.  Narragansett

3  Electric Company provides the electric service.  That they're

4  providing post-petition service, that under National Grid's

5  billing cycle regulations and tariffs, National Grid bills the

6  Debtor as follows.

7       The meters are read every 27 to 33 days, approximately one

8  month.  Bills are due upon receipt but the customer's afforded

9  at least 20 days after rendition of the bill to make payment

10 without being considered in default.  Non-payment by a customer

11 is not acted on upon until the next bill is issued the

12 following month.  And at that time, if the prior month's bill

13 has not been paid, a default notice giving the Debtor 10 days

14 to cure is issued.

15      And if you add up all this time, Your Honor, the testimony

16 from Mr. Grossman would be that the Debtor -- if they failed to

17 pay an invoice, could receive up to 70 days of utility service

18 -- gas or electric -- before National Grid could begin to

19 terminate service for the post-petition non-payment.  That

20 represents their exposure.

21      Mr. Grossman would testify that this billing cycle is

22 established by the applicable tariffs and regulations of the

23 Rhode Island Public Utility Commission.  And that National Grid

24 is obligated to comply with those regulations.

25      The testimony would also be, Your Honor, that National

39

1    Grid has requested a deposit in the total amount -- it's a two-
2    month deposit of $302,018, that this is a deposit that the
3    Rhode Island Public Utility Commission permits National Grid to
4    request for its customers.  That this deposit is less than the
5    70 days of exposure testified to, but this is the deposit that
6    it is requested that it feels that it's obligated to request
7    pursuant to its tariffs and bound by.
8         Your Honor, the -- Mr. Grossman would also testify that he
9    is familiar with the Debtor's offer of adequate assurance and
10   that is not satisfactory -- that it doesn't even cover one-half
11   of one month's billing cycle and that if that was a relevant
12   standard that it would be rejected.
13             THE COURT:  Thank you.
14             MR. JOHNSON:  That's all.
15             THE COURT:  Any cross examination from the Debtors -
16   - or anyone for that matter?  Any interested party?
17             MR. CHIPMAN:  May I have a moment, Your Honor?
18             THE COURT:  Certainly.
19             MR. CHIPMAN:  No, Your Honor.
20             THE COURT:  Anything further, Mr. Johnson?  Any
21   other witness?
22             MR. JOHNSON:  No other witness.
23             THE COURT:  Okay.  Then I'll hear follow-up
24   argument.
25             MR. CHIPMAN:  Thank you, Your Honor.  Your Honor,

1  carveout.  Doesn't require anything of the like.

2      Your Honor, a lot of what was brought up by Counsel for

3  National Grid was pre-petition issues.  It took two years --

4  the company's trying to sell itself for two years and

5  restructure its debt.  We're now in a bankruptcy case.  The

6  facts are different.  We have an agreement in principle with

7  our noteholders for a quick plan.  We've closed on $115 million

8  D-I-P with plenty of availability, plenty of cash in the bank

9  and the company's operating in a positive cash flow situation.

10      Your Honor, just as the prior arrangement between National

11  Grid and the Debtors is irrelevant under the new -- under new

12  Section 366, so should the pre-petition issues relating to the

13  Debtors.  You should look at the Debtors today, Your Honor,

14  with the D-I-P loan in place and the availability and make your

15  determination.

16      Your Honor, with the D-I-P lenders, the issue about the D-

17  I-P lender having control -- it's in every case whether it's

18  stated in the order or not, we can't pay things unless we run

19  it by the D-I-P lender.  So I don't think that that's a huge

20  issue.  Your Honor, I think that's all the issues I have to

21  address at this point.

22          THE COURT:  Thank you.

23          MR. CHIPMAN:  Thank you.

24          THE COURT:  Well, I'm prepared to grant the motion

25  here.  Under the facts and circumstances of this case, I think

1    we have a particularly strong D-I-P loan.  We have a Debtor

2    that is operating on a cash flow positive basis.  I think it's

3    going to be a -- we hope that it's going to be a short and

4    sweet bankruptcy case before we get to a plan confirmation.

5    Under those circumstances, and the specific circumstances of

6    this case, I believe that the two weeks is adequate assurance

7    for the utility.

8         I might note that I make myself available readily and if

9    there is a problem in payment to the utility, I'm certainly

10   here to consider emergency relief if it's appropriate or

11   necessary.  And to revisit this issue.  But on a going-forward

12   basis, the Court is satisfied with the two weeks of deposit.

13   Thank you, Mr. Johnson.

14            MR. CHIPMAN:  Thank you, Your Honor, and if I may

15   approach, I do have a clean and a blackline version of the

16   order.  I can walk you through, Your Honor, some changes.

17            THE COURT:  Thank you.

18            MR. CHIPMAN:  Thank you.  Your Honor, the United

19   States Trustee had requested that these procedures can remain

20   in place so long as the Debtors are not in any post-petition

21   payment default.  And at the top of page 2 we have made that

22   addition to the order.  In other words, the Debtor's going to

23   pay their utilities --

24            THE COURT:  That's right.

25            MR. CHIPMAN:  -- in the ordinary course.

57

1    THE COURT:  The concern that I raised.

2    MR. CHIPMAN:  Right.  Your Honor, on page 4, we've

3  added the concept of the utility escrow -- the $150,000.  And

4  how that will be doled out to the utility companies -- those

5  are the two ordered paragraphs.  And I believe those are the

6  only two changes from the Form of Order that was submitted with

7  the motion to the order that we're asking Your Honor to enter

8  today.

9    THE COURT:  Thank you.  All right.

10    MR. CHIPMAN:  And that's it.

11    THE COURT:  I'm prepared to enter -- I will enter

12  the order.

13    MR. CHIPMAN:  Thank you, Your Honor.  And I believe,

14  unless anyone has anything else, that takes care of today's

15  agenda.

16    THE COURT:  I thank everyone and we'll stand in

17  recess.  Thank you very much and good day.

18    MR. CHIPMAN:  Thank you, Your Honor.

19    (Court adjourned)

20

21                    CERTIFICATION
I certify that the foregoing is a correct transcript from the
22  electronic sound recording of the proceedings in the above-
entitled matter.
23

24  _____        _1-19-07_
Signature of Transcriber              Date
25

*Writer's Cramp, Inc.*
Certified Court Transcribers
732-329-0191

A-80

## CERTIFICATE OF SERVICE

John D. Demmy hereby certifies that on this 14th day of May, 2007, the foregoing *APPENDIX IN SUPPORT OF OPENING BRIEF* was served via hand delivery on counsel of record, identified below:

Denise S. Kraft, Esq.
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

/s/ John D. Demmy
John D. Demmy