UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| AMTROL HOLDINGS, INC., *et al.*, | : | Bankruptcy Case No. 06-1146 |
| Debtors. | : | |
| | : | |
| NEW ENGLAND GAS COMPANY, *et al.*, | : | |
| Appellants, | : | |
| | : | Civil Action No. 07-75-GMS |
| AMTROL HOLDINGS, INC., *et al.*, | : | |
| Appellees. | : | |

APPELLANTS' REPLY TO THE
BRIEF OF APPELLEES, AMTROL HOLDINGS, INC., *ET AL.*

Dated:  June 29, 2007

John D. Demmy (I.D. No. 2802)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, Delaware  19801
Phone:  (302) 425-3308
Fax:  (610) 371-8515
E-mail:  jdd@stevenslee.com

-and-

Russell R. Johnson III
2258 Wheatlands Drive
Manakin-Sabot, VA 23103
Phone:  (804) 749-8861
Fax:  (804) 749-8862
E-mail: russj4478@aol.com

*Counsel for Appellants New England Gas
Company and Narragansett Electric
Company, both d/b/a National Grid*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ................................. 1

STATEMENT OF THE CASE ........................................................................................ 3

     Service Issue ......................................................................................................... 3

     Record On Appeal – Judicial Notice Issues ......................................................... 5

ARGUMENT .................................................................................................................. 8

     Legal Standard ..................................................................................................... 8

A.   THE DEBTORS' ARGUMENT THAT IT COMPLIED WITH
      SECTION 366(b) AND THEREFORE WAS NOT REQUIRED
      TO COMPLY WITH THE REQUIREMENTS OF SECTION
      366(c) IN THEIR CHAPTER 11 BANKRPUTCY PROCEEDING
      IS WITHOUT MERIT AND CONTRARY TO THE
      REQUIREMENTS OF THE STATUTE ................................................................. 9

B.   THE FINAL UTILITY ORDER SHOULD BE REVERSED
      BECAUSE NEITHER THE DEBTORS NOR THE
      BANKRUPTCY COURT FOLLOWED THE REQUIREMENTS
      OF SECTION 366(c) ....................................................................................... 16

CONCLUSION ............................................................................................................. 17

## TABLE OF AUTHORITIES

## CASES

*In re Astle*, 338 B.R. 855 (Bankr. D. Idaho 2006) ............................................................10

*BFP v. Resolution Trust Corp.*,
   511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).................................................12

*Bowie Produce Co., Inc. v. Magic American Café, Inc.*,
   202 B.R. 24 (D. Del. 2006).............................................................................................2

*DiGiacomo v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*,
   420 F.3d 220 (3d Cir. 2005)..........................................................................................16

*Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).....................12

*Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc.*,
   283 B.R. 537 (B.A.P. 8th Cir. 2002)...............................................................................7

*Griffin v. Oceanic Contractors, Inc.*,
   458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)..................................................13

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*,
   530 U.S. 1, 147 L.Ed.2d 1, 120 S.Ct. 1942 (2000).......................................................11

*Indian Palms Associates, Ltd. v. California Federal Bank*,
   61 F.3d 197 (3d Cir. 1995)..........................................................................................6, 7

*In re Kaiser Aluminum Corp.*, 456 F.3d 328 (3d Cir. 2006)..............................................13

*In re Lucre, Inc.*, 333 B.R. 151 (Bankr. W.D. Mich. 2005)........................................10, 16

*Lamie v. United States Trustee*,
   540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)..............................................11

*Michigan v. Michigan Trust Co.*,
   286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136 (1932).......................................................11

*Mohyadein F. Salaymeh, v. Plaza Centro LLC*,
   361 B.R. 822 (Bankr. S.D. Tx. 2007) ..........................................................................13

*Mullane* v. *Central Hanover Bank & Trust Co.,*
    339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)............................................................3

## STATUTES

11 U.S.C. § 366.................................................................................................. *passim*

## RULES AND REGULATIONS

Rule 7004 of The Federal Rules of Bankruptcy Procedure .........................................3, 4, 5

Rules 8001 through 8020 of The Federal Rules of Bankruptcy Procedures.......................8

Rule 8001 of The Federal Rules of Bankruptcy Procedure .................................................3

Rule 8006 of The Federal Rules of Bankruptcy Procedure .................................................8

Rule 8011 of The Federal Rules of Bankruptcy Procedure .................................................6

Rule 9014 of The Federal Rules of Bankruptcy Procedure .............................................3, 5

Rule 201 of The Federal Rules of Evidence ....................................................................7, 8

Rule 802 of The Federal Rules of Evidence .......................................................................7

## TREATISES

"Sustaining Power: Applying U.S.C. Section §  In Chapter 11 Post-BAPCPA,"
    Bertrand Pan, Jennifer Taylor, 22 Emory BDJ 371, 388 (Spring 2006).........................10

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

The Debtors' argument that the Final Utility Order was not a final order is without merit. As an initial matter, it was the fact that the Bankruptcy Court elected to overrule the Objection of New England Gas Company and Narragansett Electric Company (collectively, "National Grid") and treat the Utility Motion as a motion filed under Section 366(c)(3) that resulted in the Bankruptcy Court: (1) making an adequate assurance of payment determination under Section 366(c)(3); (2) ignoring the requirements of Section 366(c)(2); and (3) violating National Grid's rights under Section 366(c). In addition, in order to follow the Debtors' strained logic, the Court would have to treat a motion filed under Section 366(c) like a motion to reconsider under Rule 9023 of the Federal Rules of Bankruptcy Procedure. Section 366(c)(3), however, does not provide National Grid with the immediate right to ask the Bankruptcy Court to reconsider the adequate assurance of payment determination that the Bankruptcy Court made in the Final Utility Order. Instead, Section 366(c)(3) allows either the debtor or a utility to ask the Court, after notice and a hearing, to modify a previous adequate assurance of payment determination based on a change in circumstances or facts. The suggestion that National Grid should have incurred additional fees and expenses to file a futile Section 366(c)(3) motion to seek a reconsideration of the Court's adequate assurance of payment determination in the Final Utility Order is absurd and without support in Section 366 or the Bankruptcy Code.

Moreover, in the *Debtors' Motion For a Bridge Order and **a Final Order** (I) Prohibiting Utility Companies From Discontinuing, Altering or Refusing Service, (II) Establishing Procedures For Providing Deposits To Requesting Utilities, (III) Deeming Utility Companies To Have Adequate Assurance of Payment, and (IV) Establishing Procedures For Resolving*

1

*Requests For Additional Assurance Pursuant To 11 U.S.C. §§ 105(a) & 366* (the "Utility Motion") (emphasis added) the Debtors attached as Exhibits A and B, the proposed Bridge Order and the proposed Final Utility Order.  In addition, in the "Wherefore" provision of the Utility Motion, the Debtors asked the Court to "enter a Bridge Order, in substantially in the form attached hereto as Exhibit A, **and a Final Order**, in substantially the form attached hereto as Exhibit B, . . . ." (emphasis added).

Pursuant to the relief requested by the Debtors in the Utility Motion, the Bankruptcy Court entered the Bridge Order on December 20, 2006, which was the interlocutory order.  Then, after an evidentiary hearing was held over the Objection of National Grid to the presentation of evidence and treating the Utility Motion as a pleading under Section 366(c)(3), the Court entered the Final Utility Order.

Finally, the Debtors offer no explanation why a Final Order they drafted and requested to be entered was not truly a Final Order. The case of *Bowie Produce Co., Inc. v. Magic American Café, Inc.*, 202 B.R. 24 (D. Del. 2006) cited by the Debtors is irrelevant as to whether the Final Utility Order is a final appealable order.  In *Bowie Produce*, there was no dispute that the bankruptcy court's denial of summary judgment in an adversary proceeding was an interlocutory order.  Rather, the issue before the court in *Bowie Produce* was whether the court should grant leave to file an interlocutory appeal. *Id.,* 202 B.R. at 26.  The Debtors merely cite to *Bowie Produce* for the black letter of law premise that a party must obtain leave of the court to pursue an interlocutory appeal.

Based upon the foregoing, it is clear that the Final Utility Order entered by the Bankruptcy Court pursuant to the relief requested by the Debtors in the Utility Motion and after

2

an evidentiary hearing was held, is a final order appealable as of right pursuant to Federal Rule

of Bankruptcy Procedure 8001(a).

## STATEMENT OF CASE

### Service Issue

On page 7, fn. 4 in the Statement Of Case and on page 21 of the *Brief Of Appellees,*

*Amtrol Holdings, Inc., Et. Al* (the "Debtors' Brief"), the Debtors claim that they properly served

National Grid with the Utility Motion. The service undertaken by the Debtors regarding the

Utility Motion was neither in a manner reasonably calculated to provide National Grid with

notice and an opportunity to be heard on the Utility Motion prior to entry of the Bridge Order nor

was it in compliance with the Federal Rules of Bankruptcy Procedure. *See Mullane* v. *Central*

*Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (holding, in part,

that Due Process requires reasonable notice and opportunity for hearing appropriate to the

pending matter). Specifically, the Utility Motion initiates a contested matter governed by Rule

9014 of the Federal Rules of Bankruptcy Procedure, which provides, in pertinent part:

> (a) Motion. In a contested matter not otherwise governed by these rules, relief
> shall be requested by motion, and reasonable notice and opportunity for
> hearing shall be afforded the party against whom relief is sought.

Accordingly, Rule 9014(a) not only incorporates the *Mullane* requirement for Due Process but

mandates that such procedure shall be followed in a contested matter pending before the

Bankruptcy Court.

In addition, Rule 9014(b) specifically requires that service of the Utility Motion be done

by the Debtors in a manner provided for service of a summons and complaint pursuant to Rule

7004. Therefore, to comply with Due Process and with Rule 9014, the Debtors were required to

3

serve the Utility Motion upon an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process for National Grid in accordance with Rule 7004(b)(3).

In this case, the undisputed evidence demonstrates that at some time on December 19, 2006, the Debtors "served" the Utility Motion, which was scheduled for a December 20, 2006 hearing at 9:30 a.m. in Wilmington, Delaware, on National Grid as follows:

1.      Via overnight mail upon National Grid, P.O. Box 1048, Woburn, MA 01807-1048 and National Grid, Processing Center, Woburn, MA 01807-0049, Appendix to Opening Brief at Tab 2;

2.      Via facsimile upon National Grid, 252-824-2737 and National Grid, Processing Center, 866-833-5023; and

3.      National Grid, Processing Center, customerservice@us.ngrid.com.

The foregoing "service" is not in compliance with Rules 7004 and 9014 of the Federal Rules of Bankruptcy Procedure and cannot reasonably be believed to have provided New England Gas Company (located in Massachusetts) and Narragansett Electric Company (located in Rhode Island) with the opportunity to attend the December 20, 2006 hearing at 9:30 a.m. in Wilmington, Delaware.  The Debtors statement that National Grid "chose not to appear at the First Day Hearings scheduled by the Bankruptcy Court on December 20, 2006" is absurd and untrue.  Debtors' Brief at page. 21.  Moreover, the Debtors' claim that the relief sought was emergent in nature, and, therefore, local rules purportedly authorized the foregoing "service" misses the entire point of the issues that are the subject of this Appeal. *Id.*  Section 366(c) establishes procedures that should govern the adequate assurance of payment determination in

4

the first 30 days of a case, especially a case involving a mere 17 utility companies. There was no emergency and no need to avoid the requirements of Section 366, as well as avoid the service requirements of Rules 7004 and 9014 of the Federal Rules of Bankruptcy Procedure, if the Debtors and the Bankruptcy Court simply followed the applicable statutory provisions.

National Grid did not raise the improper service issue as one of the issues on appeal. The reason for addressing the Debtors' failure to properly serve National Grid and the Bankruptcy Court's *ex parte* entry of the Bridge Order in the Opening Brief was to set forth the procedural context in which the Debtors and the Bankruptcy Court violated National Grid's rights.

### Record On Appeal – Judicial Notice Issues

Recognizing that they failed to produce sufficient evidence at the Final Hearing to meet their burden of proof under Section 363(c)(3), the Debtors improperly designated the following items in their *Designation of Additional Items To Be Included In Record On Appeal Pursuant To Bankruptcy Rule 8006* (the "Debtors' Additional Designation of Record") that were not admitted into evidence at the Final Hearing:

1.  Exhibit 1 - *Affidavit in Support of First Day Motions by Larry T. Guillemette;*

2.  Exhibit 2 – December 20, 2006 Transcript of First Day Hearing Before the Honorable Kevin Gross;

3.  Exhibits 7, 8, 9, 10, 11 – Orders from other bankruptcy cases.

As discussed in National Grid's Opening Brief, none of the foregoing items designated by the Debtors were entered into evidence at the Final Hearing, and many of the items were subject to valid evidentiary objections that the Bankruptcy Court did not have to rule upon because the Debtors failed to move the evidence into the record. The Debtors are now attempting to correct

their evidentiary deficiencies by claiming that this Court should find that the Debtors' designated

item Exhibit 1 - *Affidavit in Support of First Day Motions by Larry T. Guillemette* (the "First

Day Affidavit") may be considered by this Court pursuant to the doctrine of judicial notice

because the Bankruptcy Court could have taken judicial notice of the First Day Affidavit, even

though the Bankruptcy Court never took judicial notice of it (Debtors' Brief at p. 9), and that

National Grid supposedly waived its objections to any items set forth in the Debtors' Additional

Designation of Record because National Grid did not file a separate Motion to Strike pursuant to

Rule 8011 (Debtors' Brief at p. 19).  The Debtors arguments, however, are without merit because

if a party failed to introduce a document into evidence before a bankruptcy court, they cannot –

for the first time on appeal – be permitted to rely upon such a document during an appeal.

First, the Debtors have not asserted that this Court should, or even can, take judicial

notice of Exhibits 2, 7, 8, 9, 10, and 11.  Accordingly, as discussed in National Grid's Opening

Brief, this Court should not consider those improperly designated items.

With regard to the First Day Affidavit, the Debtors apparently contend that it should be

considered by this Court because the Bankruptcy Court could have taken judicial notice of it,

even though the Record before this Court does not reflect that the Bankruptcy Court ever took

judicial notice of the First Day Affidavit.  Pursuant to Fed. R. Evid. 201(b), a court can take

judicial notice of an adjudicative fact if that fact is "not subject to reasonable dispute."  *See*

*Indian Palms Associates, Ltd. v. California Federal Bank*, 61 F.3d 197, 205 (3d Cir. 1995).

Judicial notice may be taken at any stage of the proceeding, including on appeal, as long as it is

not unfair to a party to do so and does not undermine the trial court's fact-finding authority.  *Id.*

In *Indian Palms Associates*, the Third Circuit stated:

6

> [T]he fact that a document is included in the relevant record does not mean that the bankruptcy judge, or the reviewing district court judge, is entitled to use it for any purpose. . . . Each litigant should be given a fair opportunity to rebut and put into perspective the evidence admitted against its position.

*Id.*

This Court should not take judicial notice of the First Day Affidavit because it is inadmissible hearsay pursuant to Fed. R. Evid. 802. *See Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.)*, 283 B.R. 537, 543 (B.A.P. 8th Cir. 2002) (ruling that where a bankruptcy court does not agree to consider a matter by affidavit nor admits it into evidence, the affidavit is apart of the Bankruptcy Record under FED. R. CIV. P. 43(a) subject to the Rules of Evidence precluding inadmissible hearsay). Additionally, this Court should not take judicial notice of the First Day Affidavit pursuant to Fed. R. Evid. 201 because it contains factual allegations that are subject to reasonable dispute. Furthermore, it would be unfair to National Grid for the Court to take judicial notice of the First Day Affidavit because National Grid had no opportunity at the Final Hearing to cross-examine the affiant, *Larry T. Guillemette* concerning the factual allegations contained in his First Day Affidavit because he was not present. Indeed, the only person present at the Final Hearing for the Debtors was their CFO, Joseph L. DePaula, and only Mr. DePaula's testimony was proffered by the Debtors at the Final Hearing. *See Indian Palms Associates,* 61 F.3d at 205 (Judicial notice may be taken at any stage of the proceeding as long as it is not unfair to a party to do so and does not undermine the trial court's fact-finding authority.) For the foregoing reasons, this Court should not take judicial notice of the First Day Affidavit.

With respect to the Debtors argument that National Grid supposedly waived its objections to any items set forth in the Debtors' Additional Designation of Record because National Grid

7

did not file a separate Motion to Strike, there is no requirement or provision in Federal Rules of

Bankruptcy Procedure 8006, *Record and Issues on Appeal*, requiring a party to contest a

designation at the time it is made.  Furthermore, there is no requirement or provision in any of

the other rules set forth in Part VIII of the Federal Rules of Bankruptcy Procedure governing the

procedure for *Appeals To District Court or Bankruptcy Appellate Panel*, Rules 8001 through

8020, requiring a party to file a separate motion to contest a designated item, nor do the Debtors

cite to any other legal authority that would require a party to file such a motion.  In the unlikely

event that this Court decides to take judicial notice of the First Day Affidavit, National Grid

requests an opportunity to be heard regarding the propriety of taking such judicial notice

pursuant to Fed. R. Evid. 201(e).

For the foregoing reasons, the Court should not consider improperly designated Exhibits

1, 2, 7, 8, 9, 10, and 11 to Debtors' Additional Designation of Record.

## ARGUMENT

### Legal Standard

Section 366 of the Bankruptcy Code provides:

(a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date.  On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the of the amount of the deposit or other security necessary to provide adequate assurance of payment.

(c)(1)(A) For purposes of this subsection, the term 'assurance of payment' means

(i) a cash deposit;
(ii) a letter of credit;
(iii) a certificate of deposit;
(iv) a surety bond;
(v) a prepayment of utility consumption; or
(vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.
(B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment,

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).
(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider
(i) the absence of security before the date of the filing of the petition;
(ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
(iii) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

**A.      THE DEBTORS' ARGUMENT THAT IT COMPLIED WITH SECTION 366(b) AND THEREFORE WAS NOT REQUIRED TO COMPLY WITH THE REQUIREMENTS OF SECTION 366(c) IN THEIR CHAPTER 11 BANKRPUTCY PROCEEDING IS WITHOUT MERIT AND CONTRARY TO THE REQUIREMENTS OF THE STATUTE.**

Apparently recognizing that neither the Utility Motion nor the Final Utility Order were in compliance with Section 366(c) of the Bankruptcy Code, the Debtors assert that they have the option under Section 366 to either proceed under Section 366(b) or Section 366(c) when addressing adequate assurance of payment for their utilities.  Debtors' Brief at pages 22 to 24.

9

According to the Debtors' imaginative and statutorily unsupported argument, if the Debtors provide a utility with adequate assurance under the provisions of Section 366(b) they no longer must comply with Section 366(c). The Debtors' arguments should be rejected by this Court because: (1) there is no statutory support for the Debtors' argument and the Debtors' proposed statutory interpretation effectively reads Section 366(c) out of the Bankruptcy Code; (2) the plain language of subsections (b) and (c) and existing case law are contrary to the Debtors' position; and (3) principles of statutory construction do not support the Debtors' position.

As an initial matter, there is no language in Section 366 that provides that a debtor or a utility can unilaterally elect to proceed under either Section 366(b) or (c) when dealing with adequate assurance of payment. There, however, is language in Section 366(c) that specifically limits the language in the 2005 amendments to Chapter 11 proceedings. Specifically, the definition of "assurance of payment" in Section 366(c)(1)(A) is limited to subsection (c). In addition, Section 366(c)(2) is limited to Chapter 11 proceedings. Accordingly, the more logical interpretation and the one supported by the actual language of Section 366 and the two published decisions addressing the 2005 amendments is that Section 366(b) applies to Chapter 7, 9, 12 and 13 bankruptcy cases and Section 366(c) applies to Chapter 11 cases. *In re Astle*, 338 B.R. 855, 859 (Bankr. D. Idaho 2006) (Section 366(c) does not apply to a Chapter 12 proceeding); *In re Lucre, Inc.*, 333 B.R. 151, 153 (Bankr. W.D. Mich. 2005) ("Subsection (c) applies to all Chapter 11 cases filed after October 16, 2005."); *see also* "Sustaining Power: Applying U.S.C. Section § In Chapter 11 Post-BAPCPA," Bertrand Pan, Jennifer Taylor, 22 Emory BDJ 371, 388 (Spring 2006) (" Although this was apparently the approach adopted by the Lucre court,fn136 the Collier assertion that subsection (c) applies to the exclusion of subsection (b) in chapter 11 cases seems

10

to be the interpretation that better carries out the intention behind § 366 . . .").

By asserting their position, Debtors raise an issue of statutory construction where such an issue does not exist and should not be tolerated by this Court. "Problems of statutory construction do not arise unless the meaning of a statute is obscure or uncertain in its relation to a set of facts." *Michigan v. Michigan Trust Co.*, 286 U.S. 334, 343, 52 S.Ct. 512, 76 L.Ed. 1136 (1932). Section 366(c) could not be clearer - that subsection applies to Chapter 11 debtors and because of its applicability subsection (b) does not. Nonetheless, principles of statutory construction do not support the Debtors' proposed statutory interpretation. "The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 147 L. Ed. 2d 1, 120 S. Ct. 1942 (2000)).

Debtors assert that a debtor may elect to abide by Section 366(b) and by so doing ignore the express provisions of Section 366(c). In other words, Debtors would have this Court believe that Debtors are authorized *sua sponte* to pick and choose which portions of the statute apply to them. Debtors, however, do so at their own peril. Consistent with *Lamie*, the provisions of Section 366 are clear, unambiguous, and must be read as a whole. Applying this approach of statutory construction, Section 366(c) applies to Chapter 11 debtors. Not sometimes, not in some cases, and not when the debtor does or does not feel like complying with the requirements to pay its utilities adequate assurance either twenty (20) or thirty (30) days following the petition date.

11

If this Court agreed with the Debtors' strained interpretation Section 366, it would render Section 366 almost meaningless in Chapter 11 cases.

Simply put, the Debtors twisted interpretation of Section 366 does not make sense. Section 366(a) provides that a utility may not undertake certain actions against a trustee or debtor based upon certain conditions. In other words, Section 366(a) enjoins utilities from altering, refusing, or discontinuing service to, or discriminating against, the trustee or the debtor solely because debtor filed a bankruptcy case or because the debtor owed the utility for unpaid service at the time of the order for relief. Subsection (a) of Section 366 begins with language indicating that the statute is to be read as a whole, "[e]xcept as provided in subsections (b) and (c)." More importantly, however, just like subsection (b), subsection (c) indicates when and under what circumstances the injunction of subsection (a) no longer applies. The express provisions of subsections (b) and (c) are not reiterations of each other, or otherwise redundant. There are several distinctions between subsection (b) and subsection (c) rendering them equally applicable as well as consistent in the context of the entire statute. For example, subsection (c) goes further than subsection (b) including its express provision that subsection (c) applies to debtors in Chapter 11 cases. "It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Duncan v. Walker*, 533 U.S. 167, 173, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001); *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) ("It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.").

Accordingly, the Court must find that Congress intended for subsection (c) to apply to debtors in Chapter 11 cases because the statute says so and under fundamental tenets of statutory construction, this Court should presume that Congress acted intentionally. In other words, by including reference to debtors in Chapter 11 in one subsection and excluding any reference to debtors in Chapter 11 in another subsection which in virtually every other way performs the same function, this Court must find that subsection (b) under its plain meaning does not apply to Debtors in this case. For this Court to decide otherwise and accept Debtors' position would render subsection (c) meaningless and superfluous. "The basic tenets of statutory interpretation [is that] a statute must be interpreted so that no provision is surplusage. It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant." *Mohyadein F. Salaymeh, v. Plaza Centro LLC (In re Mohyadein F. Salaymeh)*, 361 B.R. 822, 828 fn.2 (Bankr. S.D. Tx. 2007).

Finally, "[a] basic tenet of statutory construction is that courts should interpret a law to avoid absurd or bizarre results." *In re Kaiser Aluminum Corp.*, 456 F.3d 328 (3d Cir. 2006). Simply put, a court should not interpret a statute in such a way which produces absurd results and must avoid doing so when an alternative interpretation proves consistent with the purpose of the legislation. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (holding that "[i]t is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). For this Court to adopt the Debtors' position here that it is free to choose between abiding by subsection (b) and disregarding subsection (c) and that by so

doing Debtors have complied with the statutory requirements of Section 366 requires this Court to sanction a position that subsection (c) applies only when a debtor decides that subsection (c) will apply. This result is in contravention of the express provisions of Section 366 and must be avoided by this Court, especially when the alternative interpretation for subsection (c) is that Congress meant what it said when it said that subsection (c) applies in Chapter 11 cases. If both subsection (b) and (c) applied in Chapter 11 cases, Congress would have stated in subsection (b), as it expressly did in subsection (c), that subsection (b) applies in Chapter 11 cases. Congress did not. In addition, if Debtors' position is correct that a proactive affirmatively active debtor has twenty (20) days upon the filing of the case to act but not thirty (30) as by that time subsection (c) would kick in, then the Debtors' position would create a gap period between the twenty (20) and the thirty (30) day timeframes expressly provided in each subsection.

Clearly, the Debtors are asserting their position, in part, to avoid the obligation spelled out in subsection (c) that the adequate assurance of payment must be satisfactory to the utility and in a form as defined therein. In their bankruptcy cases, Debtors of course did neither. Subsection (b) does not define the form of security that must be provided nor does it require that the adequate assurance of payment must be satisfactory to the utility. Accordingly, applying the Debtors' position, Congress has failed under the 2005 amendments to specify which subsection of Section 366 applies to the Chapter 11 debtor who provides adequate assurance to its utility on the twenty-first day or the twenty-ninth day or any of the other days in between. In other words, under the Debtors' position, the two subsections create a gap period where none existed prior to the amendments.

The absurdity of the Debtors' position is further illustrated by the following example.

14

Debtors argue that "[i]f a debtor does not proceed under 366(b), then after 30 days following the commencement of the case, a utility may exercise its rights as set forth in 366(c)." If subsection (b) applies to a debtor in a Chapter 11 case as the Debtors propose, then under subsection (b), a utility may terminate service on the twenty-first day as the statute expressly provides. If the Debtors position is correct, however, then the termination provision of subsection (b) is rendered meaningless and superfluous when a debtor elects to proceed under Section 366(c) (the Debtors never explain how such an election would be evidenced or why just the Debtors get to make this purported election).

Certainly, this Court must ask what position the Debtors would assert if National Grid had terminated services to the Debtors on the twenty-first day who were otherwise making efforts to secure a payment of adequate assurance to National Grid within thirty (30) days of their filing. Debtors would not be content with a response by National Grid that it had decided *sua sponte* to follow the provisions of subsection (b). The Debtors would be adamant and demand damages from National Grid for failing to permit the Debtors thirty (30) days in which to provide their adequate assurance before interrupting service in accordance with subsection (c).

For all of the foregoing reasons, the Debtors' position simply does not make sense. If this Court were to adopt the Debtors' interpretation of Section 366, then this Court would be concluding that Congress intended bankruptcy courts to apply both subsections (b) and (c) to Chapter 11 debtors without providing any guidance on the mechanics of such an application thereby rendering both subsections essentially unworkable. This Court should refuse to adopt such a far-fetched statutory construction, and agree that subsection (b) does not and cannot possibly apply to Chapter 11 debtors – a position that is "neither irrational nor arbitrary."

15

*DiGiacomo v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 420 F.3d 220, 228

(3d Cir. 2005).

**B.    THE FINAL UTILITY ORDER SHOULD BE REVERSED BECAUSE NEITHER THE DEBTORS NOR THE BANKRUPTCY COURT FOLLOWED THE REQUIREMENTS OF SECTION 366(c).**

As set forth above, Section 366(c) governs the procedures and requirements for the

Debtors and National Grid in the Debtors' Chapter 11 proceedings.  Section 366(c)(1) sets forth

what adequate assurance of payment means and Section 366(c)(2) provides that a utility may

alter, refuse or discontinue service to a debtor if the utility does not receive adequate assurance

of payment from the debtor that is satisfactory to the utility within 30 days of the petition date.

Pursuant to Section 366(c)(3), the Debtor, after notice and a hearing, may move the Bankruptcy

Court to modify the amount of assurance of payment under Section 366(c)(2).

The Debtors incorrectly state on page 23 of the Debtors' Brief that National Grid "reads

this provision [Section 366(c)] to require the Debtors to pay a deposit equal to the utility's

demand, then the Debtors may seek relief from the Bankruptcy Court if the Debtors feel such

demand was excessive."  Although the foregoing describes the holding in *In re Lucre, Inc.*, 333

B.R. 151, 154 (Bankr. W.D. Mich. 2005), the quote does not accurately set forth National Grid's

position.  In a case involving a mere 17 utility companies and National Grid providing

approximately 50% of the Debtors' utility usage, the Debtors should have contacted National

Grid and the other 15 utility companies or waited to receive their requests before seeking relief

from the Court.  There was certainly no emergency on December 19, 2006 or reason for the

Debtors to file the Utility Motion on the second day of the case seeking to change the

requirements and procedures of Section 366(c) before actually trying to communicate with their

utility companies.  Moreover, the Bankruptcy Court should have denied the Utility Motion at the December 20, 2006 hearing and required the Debtors to actually comply with the requirements of Section 366(c).

In a case involving such a small number of utilities and only a few large utility companies, the Debtors clearly had time to communicate with their utility companies to determine if they needed to file a motion under Section 366(c)(3) to modify the adequate assurance of payment requests and schedule it for a hearing prior to the expiration of the 30 day period of Section 366(c).  If the Debtors had taken the foregoing course, they could have scheduled a hearing on a properly filed Section 366(c)(3) motion before the expiration of the 30 day period and possibly avoided having to pay the requested deposits.  Such a motion, however, would have had to describe why the Court should modify National Grid's two-month deposit request instead of trying to justify why a two-week deposit was appropriate.  The foregoing places a significantly different burden on the Debtors, which the Debtors did not meet.  See Opening Brief at 19 to 22.  Therefore, because neither the Debtors nor the Bankruptcy Court complied with the requirements of Section 366(c) and violated National Grid's rights, the Court should reverse the Final Utility Order.

## CONCLUSION

For all of the foregoing reasons, this Court should:

(i)      Rule in favor of National Grid as to all five issues in this Appeal;

(ii)     Reverse the Final Utility Order as to National Grid and hold that it violated the requirements of Section 366(c);

(iii)    Reverse the Final Utility Order and set forth the correct legal standard for a

Section 366(c)(3) pleading;

(iv)    Reverse the Final Order as to National Grid and hold that it violated National

Grid's rights under Section 366; and

(v)    Grant National Grid such relief as is equitable and just, such as its costs and

expenses in prosecuting this appeal for the violation of its rights under Section 366.

Dated:  June 29, 2007

STEVENS & LEE, P.C.

/s/ John D. Demmy
John D. Demmy (I.D. No. 2802)
1105 North Market Street, 7th Floor
Wilmington, Delaware  19801
Phone:  (302) 425-3308
Fax:  (610) 371-8515
E-mail:  jdd@stevenslee.com

-and-

Russell R. Johnson III
2258 Wheatlands Drive
Manakin-Sabot, VA 23103
Phone:  (804) 749-8861
Fax:  (804) 749-8862
E-mail:  russj4478@aol.com

*Counsel for Appellants*

18

## CERTIFICATE OF SERVICE

John D. Demmy hereby certifies that on this 29th day of June, 2007, the foregoing

*APPELLANTS' REPLY TO THE BRIEF OF APPELLEES, AMTROL HOLDINGS, INC., ET AL.*

was served via hand delivery on counsel of record, identified below:


Denise S. Kraft, Esq.
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

/s/ John D. Demmy
John D. Demmy